QUESTIONS PRESENTED AND CONCLUSION Questions: Does Colorado's Unclaimed Property Act, article 13 of title 38, C.R.S. (2004), apply to stored value cards and gift cards? If so, which section of the Act is applicable?
Answer: Pursuant to applicable principles of statutory interpretation, the broad provisions of §§ 38-13-103 and 104, C.R.S. (2004) of Colorado's Unclaimed Property Act encompass stored value cards, including gift cards. Therefore, the unused monetary value of cards held by a card issuer is subject to the provisions of the Act.
 ANALYSIS
A. Introduction
Colorado's Unclaimed Property Act is found at article 13 of title 38, C.R.S. (2004) ("the Act") and is modeled after a Uniform Unclaimed Property Act.[1] Unclaimed property laws are designed to transfer property that is presumed to have been abandoned or lost by its owner from the private entity that is in possession of the property ("the holder") to the custody of the State, so that the State may attempt to reunite the abandoned property with its owner, and so that the property may be used for the benefit of the public until it is claimed by its owner, rather than becoming a windfall to private holders. Generally the law covers intangible property, rather than real property. Under the Act, the Treasurer is responsible for enforcing its provisions and ensuring that holders of unclaimed or abandoned property are properly reporting such property to the State.[2]
In requesting this Opinion, the Treasurer's inquiry focuses on a kind of property known as gift cards or stored value cards. He asks whether such property is subject to the provisions of the Act. He notes that these forms of property have become increasingly common in recent years. Therefore, it is important that the Treasury determine the property's status under the Act, so that the Treasury office's statutory responsibilities can be fulfilled. The Treasurer also states that there is a divergence of opinion as to the answer to the question presented: some apparently take the position that the Act does not cover the property at all; others believe that it is covered by the provisions relating to gift certificates; and still others consider it to be subject to the Act's omnibus provisions making all intangible property subject to the Act unless otherwise excluded. The Treasurer believes that such property is subject to §§ 38-13-103 and 38-13-104 of the Act and asks whether that conclusion is legally correct.
Colorado's law does not contain the terms "stored value card" or "gift card" (collectively "SVC"). The Act does explicitly cover "gift certificates" in a section headed "Gift certificates and credit memos," although the term gift certificate is not defined in Colorado's law.[3]
§ 38-13-108.4, C.R.S. (2004). Despite the superficial similarity of the terms "gift certificate" and "gift card," the Treasurer indicates that the kind of instrument referred to in his request for an opinion has certain characteristics that generally distinguish it from traditional gift certificates. For instance, according to the Treasurer's letter requesting this opinion, gift cards and stored value cards are purchased and used differently than gift certificates, e.g., they may be given as gifts or retained by the purchaser. Also, they are recorded and tracked by the issuer more like the way credit card or bank accounts are memorialized, with the issuer frequently maintaining a record of the method of payment, the name and address of the purchaser (or even of the recipient if it is to be used as a gift). Also unlike a gift certificate, an SVC is more likely to be retained over a period of time, with value added to it periodically.
On a practical level, the Treasurer correctly distinguishes between gift certificates and SVCs. SVCs are different in form than gift certificates, the first being a plastic card on which value is recorded electronically, and the latter being a paper without any electronic component. More significantly, SVCs function quite differently than gift certificates. The dictionary defines "gift certificate" as "a certificate entitling the recipient to purchase goods or services in the establishment of the issuer to the amount specified." Merriam-WebsterOnline (visited March 11, 2005)

http://www.m-w.com/cgi-bin/dictionary?book=Dictionaryva=gift+certificatex=9y=7.

Thus a gift certificate generally represents a fixed value that can be exchanged for goods or services from only the merchant who issued it, and generally in a one-time transaction. On the other hand, SVCs, as discussed below, are electronic payment products that operate much more like currency, or like an on-going account with value periodically removed or enhanced. Also, SVCs may be issued by one entity, but may be redeemable at various other entities.
B. Electronic Payment Products
SVCs are a variety of electronic payment product or electronic cash technology, which has developed rapidly over the past fifteen years. This opinion necessarily deals only with the current state of development. SVCs are variously known as electronic gift cards, merchandise cards, smart cards, shopping cards, prepaid cards, student cards, etc., and the terms under which they are issued vary widely. For purposes of this opinion, SVCs include only those cards that are purchased, i.e., value has been transferred from the purchaser to the issuer, and exclude those for which no value has been exchanged (e.g., those issued as promotional benefits).
As used herein, SVCs operate as follows. When an individual buys an SVC from an issuer, "[m]onetary `value' is stored in the form of electronic signals . . . on a plastic card." Ellen d'Alelio and John T. Collins,Electronic Cash Under Current Banking Law (1996)
http://www.cla.org/RuhBook/chp8.htm.

The plastic card, which is similar in appearance to a credit card, is presented to a merchant in payment for goods or services. The merchant reads the electronic value of the card, and this value is reduced by the amount of the purchase. Value may be added to a card, or the card may be discarded once its value is exhausted.
As one commentator has noted, "These new technologies . . . do not necessarily fit neatly into the present framework" of unclaimed property laws. Anita Ramasastry, State Escheat Statutes and Possible Treatment ofStored Value, Electronic Currency, and Other New Payment Mechanisms, 57 BUS. LAW 475, 477 (2001). "Clearly the statutes at present do not readily fit the changing environment of electronic commerce." Id. at 478.
Nonetheless, this opinion concludes that, under traditional rules of statutory construction, Colorado's Act operates broadly to cover all intangible property unless specifically exempted by the Act or as otherwise provided in other statutes or local laws. Sections 38-13-103
and 38-13-104, C.R.S. (2004), are omnibus or "catch-all" provisions modeled after the Uniform Act, and SVCs are covered by these provisions.[4]
C. Operation and Purpose of Unclaimed Property Laws
No State court has ruled on whether SVCs are included within the meaning of "intangible property" in an unclaimed property act. Our analysis begins with a brief history and an overview of the operation and purposes of unclaimed property laws. Though often referred to as "escheat" laws, this is a misnomer. Cf. Delaware v. New York, 507 U. S. 490, 497
(1993). So-called "true (or absolute) escheat" refers to the reversion of real property to the State when the owner dies without heirs.[5] In contrast, unclaimed property law, sometimes called "custodial escheat," generally refers to intangible rather than real property that appears to have been abandoned by its owner (e.g., inactive bank accounts; uncashed checks and money orders; and unclaimed wages, deposits, refunds, and life insurance policy proceeds). After some fixed period of time without activity or contact with the owner, a presumption of abandonment arises, and the value of the property is transferred from the private holder to the State. The State then takes custody but not ownership of the property, holding the amount in perpetuity for the owner or his heirs.
The U. S. Supreme Court has likened unclaimed property laws to statutes of limitations or recording statutes. Such laws have withstood legal challenge over the years. "From an early time, [the Supreme Court of the United States] has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time." Texaco, Inc. v. Short, 454 U. S. 516, 526 (1982) (citing Hawkinsv. Barney's Lessee, 30 U. S. 457 (1831)). See also Delaware v. New York,507 U. S. 490, 502 (1993) (State may protect interests of owners of abandoned property by taking custody thereof) (citing Anderson Nat. Bankv. Luckett, 321 U. S. 233, 241 (1944)). "Disposition of abandoned property is a function of the state, a sovereign exercise of regulatory power over property." Id. (internal quotation marks omitted) (citing Standard OilCo. v. New Jersey, 341 U. S. 428, 436 (1951)).
In 1954, the National Conference of Commissioners on Uniform State Laws ("the Commissioners") approved the first Uniform Disposition of Unclaimed Property Act (1954 Uniform Act). UNIF. DISPOSITION OF UNCLAIMED PROPERTY ACT (1954), 8A U.L.A. 215 (1983). Since that time the Commissioners have issued three subsequent Uniform Acts,[6] and most, if not all, States have utilized these Uniform Acts in creating their own laws on the subject. Joshua A. Joyce and Hugh F. Drake, Found Treasure: A Primer OnUnclaimed Property in Illinois, 91 ILL.B.J. 409, 409 (2003). Upon promulgating the first Uniform Act, the Commissioners identified the need for uniformity in the unclaimed property laws of all the States. "In addition to the general desirability of symmetry in the law for the benefit of persons doing business in more than one state," uniform unclaimed property legislation is necessary in order to prevent holders from incurring "multiple liability" to different States with regard to the same property, and to prevent unseemly races among States seeking to be the first to claim the property. UNIF. DISPOSITION OF UNCLAIMED PROPERTY ACT PREFATORY NOTE (1954), 8A U.L.A. 215, 215-16 (1983). The Uniform Acts prevent such problems by providing, inter alia, for reciprocity. UNIF. DISPOSITION OF UNCLAIMED PROPERTY ACT PREFATORY NOTE (1954), 8A U.L.A. 215, 216 (1983).
Unclaimed property laws have a number of underlying beneficent purposes. The Commissioners note that such laws "protect the interests of owners" of unclaimed property, "relieve holders from annoyance, expense, and liability," "preclude multiple liability," and give States "the use of some considerable sums of money that otherwise would, in effect, become a windfall to holders." UNIF. DISPOSITION OF UNCLAIMED PROPERTY ACT PREFATORY NOTE (1954), 8A U.L.A. 215, 217 (1983). Stated differently, they protect the property rights of the missing owner; prevent seizure by and unjust enrichment to the private holder of the property; guarantee that "a perpetually solvent" entity, the State, exists to honor the owner's claim, relieve the holder of the burden of having "a potentially infinite liability on its . . . books," provide "an additional, if only temporary, source of revenue for" States, and allow for "the redistribution of the unclaimed property back into the commercial stream for the common good." Hall, supra at 83. Such laws also require that the State and the holder attempt "to reunite the owner with his property," may prevent any statute of limitations from running against the State or the owner, and promote "the general welfare of the community." Mayo, supra at 419-20.
D. Applicable Principles of Statutory Construction
The question then becomes the legislature's intent regarding which intangible property is to be covered by Colorado's unclaimed property law. More specifically, did the General Assembly intend to include SVCs as intangible property subject to the Act, even though that term is not included in the Act? The question is answered by utilizing various canons of statutory construction, and referring to §§ 38-13-103 and 38-13-104, the omnibus or "catch-all" sections of the Act.
A recent Colorado Supreme Court case sets out a number of the "well-established principles of statutory construction." Showpiece HomesCorp. v. Assurance Co. of America, 38 P.3d 47 (2001).
 The first goal of a court construing a statute is to ascertain and give effect to the intent of the General Assembly. Constructions that defeat the obvious legislative intent should be avoided. To determine the legislative intent, courts look first to the statutory language, giving words and phrases their plain and ordinary meaning.
Id. at 51 (citations omitted); see also State v. Nieto,993 P.2d 493, 509 (Colo. 2000) ("Legislative intent is the polestar of statutory construction.") (quotingSchubert v. People, 698 P.2d 788, 793 (Colo. 1985).
1. Legislative Intent
In promulgating the Act, the Colorado legislature evinced an intent to subject all intangible property to its terms, except as otherwise specified. Section 38-13-103
states:
 § 38-13-103. Property presumed abandoned — general rule. (1) Except as otherwise provided by this article, all intangible property, including any income or increment derived therefrom, less any lawful charges, that is held, issued, or owing in the ordinary course of a holder's business and has remained unclaimed by the owner for more than five years after it became payable or distributable is presumed abandoned.
(emphasis added). This general rule applies unless the Act itself provides otherwise.
Section 38-13-104 refers to these exceptions:
 § 38-13-104. General rules for taking custody of intangible unclaimed property. (1) Unless otherwise provided in this article or by other statute or local law, intangible property is subject to the custody of this state as unclaimed property if the conditions raising a presumption of abandonment under section 38-13-103 or sections 38-13-105 to 38-13-109.7 are satisfied. . . .
(emphasis added). Thus, § 38-13-104 specifies three instances in which intangible property is not subject to the custody of the State as unclaimed property: first, if the Act itself provides that such property is not subject to the Act; second, if another statute provides otherwise; and third, if local law provides otherwise.[7]
The Act excludes property from its coverage by specifying that it is not included in the definition of intangible property. See § 38-13-102 (7) (b), C.R.S. (2004) ("'Intangible property' does not include unclaimed capital credit payments held by cooperative electric associations and telephone cooperatives, gaming chips or tokens, or gaming award points."). The Act also excludes property from its coverage by specifying that certain intangible property is not subject to the Act.See § 38-13-108.8, C.R.S. (2004) (property held by racetracks); § 38-13-129, C.R.S. (2004) (property associated with transactions in foreign countries). The plain language of the statute does not exclude SVCs from the Act's coverage either by excluding them from the definition of intangible property, or by providing that they are not subject to the Act.
2. Words Used Deliberately and No Exceptions Read In
Two related principles of statutory construction apply to this analysis: (1) it is presumed that the legislature used language deliberately, and (2) courts will not read in exceptions to the statutory language that were not made by the legislature.
First, courts must not only give effect to every word, but they must also presume that the legislature used language deliberately. "[W]e are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language." Blue River Defense Comm. v. Town ofSilverthorne, 33 Colo. App. 10, 14, 516 P.2d 452, 454
(1973). See also Silverview at Overlook, LLC v. Overlookat Mt. Crested Butte Ltd. Liability Co., 97 P.3d 252, 255
(Colo.App.) ("When the statutory language is clear and unambiguous, we interpret the statute as written because the General Assembly is presumed to have meant what it plainly said.") (cert. denied 2004). The language the Colorado legislature used in the Act with regard to the meaning of "intangible property" is particularly significant.
The definition section of the Act provides that "[i]ntangible property includes" nine categories of property, such as moneys, checks, drafts, deposits, interest, dividends, and income; stocks and other intangible ownership interests in business associations; security deposits, unpaid wages, and unused airline tickets; and amounts due and payable under the terms of insurance policies. § 38-13-102, C.R.S. (2004).
The use of the word "includes" in the introductory portion to paragraph § 38-13-102 (7) (a) is controlling. While the introductory portions of all the other definitions in § 38-13-102 utilize the word "means" (or, in one instance, "shall have the same meaning as set forth in [another statute]"), only paragraph (7) (a) provides that the defined term, "intangible property," "includes" rather than "means." This signifies that the legislature was not limiting intangible property to the subsequent list, but rather that the subsequent list merely contains examples of intangible property, and that, for purposes of the Act, the term "intangible property" is not limited to such examples. As stated in 2A N. SINGER, SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION, § 47:07 at 231-32 (6th ed. 2000):
 [T]he word `includes' is usually a term of enlargement, and not of limitation. . . . It, therefore, conveys the conclusion that there are other items includeable, though not specifically enumerated. . . . A definition which declares what a term means, on the other hand, excludes any meaning that is not stated.
(internal quotation marks and citation omitted). This is a principle well-established in Colorado case law. See,e.g., Colorado Common Cause v. Meyer, 758 P.2d 153, 164
(Colo. 1988); see also Lyman v. Town of Bow Mar,188 Colo. 216, 222, 533 P.2d 1129, 1133 (1975).
The words of the Colorado Supreme Court in Showpiece,38 P.3d at 53-54, are also particularly apt here. InShowpiece the Court was construing the Colorado Consumer Protection Act ("CCPA"), and dealing with the question of whether insurance companies are covered by the CCPA. In response to the argument that since the CCPA does not specifically mention insurance companies and transactions in the listing of unfair or deceptive practices, they are not covered by the CCPA, the Court stated:
 [T]his omission is not determinative. The CCPA does not list all the industries to which it applies, nor does it specify all the types of transactions it covers. In enacting the statute, the General Assembly could not have possibly enumerated all, or even most, of the practices that the CCPA was intended to cover. . . .
 We also find it persuasive that although certain persons and entities are expressly excluded from the provisions of the CCPA, the General Assembly did not see fit to exclude insurance companies or insurance transactions from the broad scope of the CCPA. . . . If the General Assembly did not see fit to exclude insurance companies from the purview of the CCPA, it is not for this court to do so. Because exemptions in other areas have been explicitly addressed, the omission of an exemption for insurance companies strongly indicates that the General Assembly did not intend such an exemption.
Id. (citations omitted).
This statement is equally applicable to the question of whether SVCs are subject to the Act. The intent of the legislature was to cover all intangible property unless such property was explicitly excluded. The Act does not enumerate all the types of intangible property that are to be covered by its terms. Some types of property are expressly excluded from the Act, but the General Assembly did not exclude SVCs from the Act's purview. The omission of an exemption for SVCs strongly indicates that the General Assembly did not intend such an exemption.
The second related principle of statutory construction is that courts will not read in exceptions to the statutory language that were not made by the legislature. It is a "time-honored" rule that courts "will not create an exception to a statute that the plain language does not suggest or demand." Slack v.Farmers Ins. Exchange, 5 P.3d 280, 284 (Colo. 2000) (citing Scoggins v. Unigard Ins. Co., 869 P.2d 202
(Colo. 1994), for the proposition that courts "will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate."). See also Dikeou v. Dikeou, 928 P.2d 1286,1292 n. 3 (Colo. 1996) ("We will not read in an exception that the General Assembly chose not to include.") ("In general, an exception not expressly made by the legislature should not be read into a statute by the courts.") (citing Karoly v. Industrial Comm'n ofColo., 65 Colo. 239, 245, 176 P. 284, 286 (1918)). Since the General Assembly did not state that SVCs are an exception to the Act's broad coverage of intangible unclaimed property, principles of statutory construction will not permit such an exception to be created.
E. Remedial Legislation
Unclaimed property laws are universally categorized as remedial legislation. Black's Law Dictionary defines a "remedial statute" as "one that . . . is designed to introduce regulations conducive to the public good." BLACK'S LAW DICTIONARY 1457 (4th ed. 1951). The purposes of unclaimed property laws include preserving the value of the intangible property for citizens who have lost track of their property, attempting to reunite owners with their missing property, holding the value of the property in perpetuity for its owner or the owner's heirs, and preventing unjust enrichment to private holders to the detriment of the public. Thus, such laws do indeed constitute remedial legislation. They promote "the general welfare of the community." Mayo, supra at 419-20. See also 73 Am.Jur.2d Statutes § 185 (2004) (Remedial statutes are those that are concerned with "new regulation for the advancement of the public welfare.").
Laws that are considered remedial legislation are to be liberally construed. "It is a general rule of law that statutes which are remedial in nature are entitled to a liberal construction in favor of the remedy provided by law, or in favor of those entitled to the benefits of the statute." 73 Am. Jur. 2d Statutes § 185 (2004). See also Showpiece, 35 P.3d at 50-51 (as a remedial statute, CCPA should be liberally construed in view of its "broad legislative purpose").[8] As was said in Marriott v. National Mut. Cas. Co., 195 F.2d 462,466 (10th Cir. 1952), with regard to another remedial statute, a Kansas law requiring commercial carriers to have liability insurance:
 The Kansas statute was enacted . . . to protect the public. . . . It is fundamental that a statute designed to protect the public, if its language permits, must be construed in the light of the legislative intent and purposes it sought to achieve. It is entitled to a broad interpretation so that its public purposes may be fully effectuated.
(citing United States v. American Trucking Ass'n,310 U. S. 534 (1940) and McDonald v. Thompson, 305 U. S. 263
(1938)).
Consistent with these principles, the New Jersey Supreme Court has specifically held that New Jersey's unclaimed property law should be broadly interpreted in favor of the State:
 Generally, the public policy of the State is in favor of the custodial taking of abandoned or unclaimed property by the State Treasurer. . . . This public policy is so strong that attempts to circumvent a custodial taking by private arrangements or private law have been declared invalid. Similarly, because of the remedial effect of the custodial scheme, the prevailing custodial statutes have been given a liberal interpretation in favor of the State and as to the position of any stakeholder or obligor.
Clymer v. Summit Bancorp., 792 A.2d 396, 402 (N.J. 2002).
Like those of the other States, including New Jersey, Colorado's unclaimed property law is a remedial statute, which is to be broadly construed in favor of the State's right to take custody of abandoned property and hold it on behalf of the owner. Including SVCs as intangible property that is subject to the Act implements this principle.
F. Public Interest Preferred Over Private Interests
The General Assembly has instructed that Colorado's laws should be presumed to favor public over private interests. See § 2-4-201 (1) (e), C.R.S. (2004) ("Intentions in the enactment of statutes. (1) In enacting a statute, it is presumed that: . . . (e) Public interest is favored over any private interest."). Unclaimed property laws favor the public interest over private ones because they elevate the owner's (and the State's) interests over those of private holders. Private holders are not entitled to retain the value of property that belongs to the property's owner, not to the holder. While always safeguarding the property until it is claimed by its owner, in the interim the State uses the property to benefit the public as a whole.
As was said in State by Richman v. Sperry Hutchinson Co., 127 A.2d 169 (N.J. 1956):
 [A holder has] no just claim to retain [unclaimed property] for its own benefit. . . . New Jersey's quest for legitimate revenues to be used for the good of all of its citizens is in nowise to be condemned and its right to the unclaimed [property] is admittedly superior to that of the [holder] which had custody but no moral or legal claim to [its] retention.
Including SVCs as property subject to the Act favors public over private interests.[9]
G. Terms of Expiration or Other Conditions in SVCs DoNot Remove Them from the Act's Coverage
Some issuers of SVCs may impose an expiration date or other conditions for use of the value stored in the card, and some argue that this prevents such SVCs from being covered as intangible property pursuant to unclaimed property laws. For instance, several sources have concluded that if SVCs are not redeemable for cash from the issuer, or if they contain an expiration date, they are not covered under unclaimed property laws.See, for example, Proposed June 1998 Comment Directed tothe Treatment of Stored Value Cards Under the UniformUnclaimed Property Act (visited Feb. 28, 2005)
http://www.abanet.org/scitech/ec/ecp/escheat2.html.
See also Richard L. Field, Forgotten But Not Gone:Escheatment of Stored Value Cards, ELECTRONIC BANKING L. AND COM. REP., June, 1996.
Such conditions do not alter the legal conclusion that SVCs are intangible property within the meaning of Colorado's law. Unclaimed property laws typically provide that private parties cannot establish periods of limitation that would defeat the purposes of such laws. Colorado's Act, for example, provides:
 The expiration, before or after July 1, 1987, of any period of time specified by contract, statute, or court order, during which a claim for money or property can be made . . . does not prevent the money or property from being presumed abandoned or affect any duty to file a report or to pay or deliver abandoned property to the administrator as required by this article.
§ 38-13-122 (1), C.R.S. (2004).
Section 16 of the 1954 Uniform Act, "Periods of Limitation," provided that the expiration of a statute of limitations regarding a claim for property prior to the effective date of the Act did not affect the holder's obligation to report the property as unclaimed property under the Act. In the 1981 Uniform Act (after which Colorado's original law was modeled), Section 29, "Periods of Limitation," broadened the Act's applicability further by adding the provision that an expiration date in a contract also did not affect the holder's obligation to report the property as unclaimed property. The Comment to the 1981 Act states that "Section 29 has an added provision that the expiration of time periods set forth in contracts will not prevent the property from becoming reportable. . . ."
The 1981 Comment relied on several cases where courts held that expiration dates or other mechanisms did not bar the State from applying the unclaimed property law.See People v. Marshall Field Co., 404 N.E.2d 368
(Ill. 1980) (expiration of gift certificates did not prevent State from taking custody of property) ("[W]here a private agreement between the parties is in fundamental conflict with public policy as established by the legislature, the private agreement must fall.");Screen Actors Guild, Inc. v. Cory, 91 Cal.App.3d 111
(Ca. 1979) (union bylaw that allowed residual funds to revert to the union if not claimed within six years did not prevent the residuals from being unclaimed property); State of New Jersey v. Jefferson Lake SulphurCo., 178 A.2d 329 (N.J.) (corporation's amendment of its articles of incorporation to provide that dividends that were unclaimed for three years reverted to the corporation was an attempt to "establish a private escheat law for itself," and therefore was invalid)cert. denied, 370 U. S. 158 (1962). See also ConnecticutMutual Life Insurance Co. v. Moore, 333 U. S. 541 (1948) (custody of unclaimed insurance proceeds taken by New York even though the owners of the policies had failed to perform certain conditions precedent to being paid),cited in Marshall Field at 373.
Thus, based upon this case law and the periods of limitation statutory provision in Colorado's law, SVCs remain intangible personal property within the ambit of the Act, even if the issuer of a particular SVC has imposed an expiration date or other condition on the use of the card by the owner.
 CONCLUSION
The public policy reasons for unclaimed property laws and applicable principles of statutory construction consistently point to the same conclusion. Colorado's Act covers all intangible property, unless otherwise excluded. SVCs are a type of intangible property not otherwise excluded from the Act's operation. Thus, SVCs are covered by the omnibus sections of the Act, §§ 38-13-103
and 38-13-104. If the issuers of SVCs or any other interested parties want to exclude SVCs from the Act, they could propose legislation that, if adopted by the General Assembly, would establish a specific exemption. Until the enactment of any such exemption, the Treasurer has authority under the Act to collect the value of abandoned SVCs from holders and to attempt to find the owners of the SVCs.
Issued this 13th day of April, 2005.

 ___________________
 JOHN W. SUTHERS
 Colorado Attorney General

P:\AG\AGOPINE\AGO 05-01Treas gift cards.doc
[1] Colorado's law is modeled after the 1981 Uniform Act. UNIF. UNCLAIMED PROPERTY ACT (amended 1981), 8C U.L.A. 151 (2001).
[2] See, for example, § 38-13-123 (1), C.R.S. (2004) (Treasurer may require holders to file reports "stating whether or not the person is holding any unclaimed property reportable or deliverable" under the Act). The Treasurer may also "examine the records of any [holder] to determine whether the person has complied with" the Act, and may do so "even if the [holder] believes he is not in possession of any property reportable or deliverable" under the Act. § 38-13-123 (2), C.R.S. (2004). Finally, the Treasurer "may bring an action in a court of competent jurisdiction to enforce" the provisions of the Act. § 38-13-125, C.R.S. (2004).
[3] § 38-13-102 is entitled Definitions and use ofterms. Within subsection (7) (a) (II), gift certificates are listed as one variety of intangible property, and grouped with "credit balances, customer overpayments, gift certificates, refunds, credit memos, and unidentified remittances." § 38-13-102 (7) (a) (II), C.R.S. (2004).
[4] At least one commentator has concluded that a category of SVCs, those issued by financial institutions, are covered by the Uniform Act's "catch-all" provisions. Ellen d'Alelio, Smart Cards and Escheat: Can the StatesReach "Abandoned" Funds Held to Pay Smart CardLiabilities?, ELECTRONIC BANKING L. AND COM. REP., May 1996, at 15.
[5] The term "escheat" stems from medieval times when feudal law provided that the real property of a tenant who died without heir reverted to his mesne lord. Cary B. Hall, Escheat? Gesundheit. But for States, It'sNothing to Sneeze at: Delaware v. New York, 113 S. Ct. 1550(1993), 5 U. MIAMI BUS.L.J. 79, 80 (1995); K. Reed Mayo, Virginia's Acquisition of Unclaimed and AbandonedPersonal Property, 27 WM. MARY L.REV. 409, 409-10 (1986). With regard to personal property, the English common law rule of bona vacantia provided that unclaimed personal property reverted to the custody of the Crown. Hall, supra at 80-81; Mayo, supra at 411-12. See alsoDelaware v. New York, 507 U. S. at 497-98. The principle that government is responsible for regulating the property of its absent citizens, however, can be traced back even further to Roman times. Cunnius v. ReadingSchool Dist., 198 U. S. 458, 469-70 (1905).
[6] The 1966 Uniform Act is found at UNIF. DISPOSITION OF UNCLAIMED PROPERTY ACT (amended 1966), 8A U.L.A. 135 (1983); the 1981 Uniform Act at UNIF. UNCLAIMED PROPERTY ACT (amended 1981), 8C U.L.A. 151 (2001); and the 1995 Uniform Act at UNIF. UNCLAIMED PROPERTY ACT (amended 1995), 8C U.L.A. 87 (2001).
[7] See also § 38-13-134, C.R.S. (2004) ("This article applies to any unclaimed or intangible property as provided in this article; but, where there is a conflict between this article and a specific statutory provision or local law relating to the disposition of tangible or intangible unclaimed property, such specific statutory provision or local law shall control the disposition of said property.").
[8] See also § 2-4-212, C.R.S. (2004) ("Liberalconstruction. All general provisions, terms, phrases, and expressions, used in any statute, shall be liberally construed, in order that the true intent and meaning of the general assembly may be fully carried out.").
[9] If a holder subsequently honors the claim of an owner whose property has been paid to the State, the holder will be reimbursed by the State. § 38-13-113, C.R.S. (2004).