# IN THE SUPREME COURT OF TEXAS

════════════
No. 12-0604
════════════

HIGHLAND HOMES LTD., PETITIONER,

v.

THE STATE OF TEXAS, RESPONDENT

════════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════════

**Argued November 7, 2013**

CHIEF JUSTICE HECHT delivered the opinion of the Court, in which JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, and JUSTICE BROWN joined.

JUSTICE DEVINE filed a dissenting opinion, in which JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE BOYD joined.

Rule 42(a) of the Texas Rules of Civil Procedure provides that when its requirements are met, "[o]ne or more members of a class may sue . . . as representative parties on behalf of all".[1] It often happens that many class members do not personally appear in the action in any way,[2] and Rule 42 prescribes procedures to ensure that those whose claims are settled or adjudicated *in absentia* are

---

[1] TEX. R. CIV. P. 42(a). The rule is similar to Rule 23 of the Federal Rules of Civil Procedure.

[2] *See* Ethan D. Millar & John L. Coalson, Jr., *The Pot of Gold at the End of the Class Action Lawsuit: Can States Claim It as Unclaimed Property?*, 70 U. PITT. L. REV. 511, 514 (2009) ("It is not uncommon in class action settlements for a significant amount of the settlement checks to never be cashed.").

afforded due process. Such procedures include court approval of class representatives and class counsel, notice to class members, and court approval of a proposed settlement after an opportunity to be heard.[3] When the rule is followed, class representatives may assert—and agree to disposition of—claims on behalf of the class, including claims on behalf of absent members.[4]

Under the Texas Unclaimed Property Act ("the Act"),[5] as we shall explain more fully, property that goes unclaimed for three years may be presumed abandoned and must then be delivered to the Comptroller to hold for the owner. The issue in this case is whether damages and settlement proceeds claimed by class representatives on behalf of absent members are nevertheless unclaimed property, presumed abandoned, and therefore subject to the Act. In other words, does the Act prohibit what Rule 42 permits—the disposition of absent class members' claims by their representatives with court approval? We hold that the Act, by its own terms, does not apply.

---

[3] Tex. R. Civ. P. 42(a)(4) (class representatives), 42(c)(2) (notice to certified class), 42(e) (approval of settlement, after the requisite notice, hearing, and findings), 42(e)(4)(A) (class members' right to object to settlement), 42(g) (appointment of class counsel).

[4] *Taylor v. Sturgell*, 553 U.S. 880, 894, 904 (2008) (recognizing that "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions," but refusing to extend nonparty preclusion); *Martin v. Wilks*, 490 U.S. 755, 762 n.2 (1989) (noting a recognized, limited exception—to the general rule that a judgment "does not conclude the rights of strangers to [the] proceedings"—in "class" or "representative" suits, but refusing to extend nonparty preclusion to white firefighters challenging employment decisions made under a consent decree in a civil rights action), *superseded by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, § 108, 105 Stat. 1074, 1076-1077, codified at 42 U.S.C. § 2000e-2(n); *Hansberry v. Lee*, 311 U.S. 32, 41-44 (1940) (noting a recognized, albeit imprecisely defined exception allowing judgments in "class" or "representative" suits to "bind members of the class or those represented who were not made parties" but refusing to extend nonparty preclusion to an injunctive decree enforcing a restrictive covenant agreement); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 450 (Tex. 2007) ("Basic principles of res judicata apply to class actions just as they do to any other form of litigation.") (citations omitted).

[5] Tex. Prop. Code §§ 71.001-76.704.

Accordingly, we reverse the judgment of the court of appeals[6] and affirm the judgment of the trial court.

## I

Petitioner, Highland Homes, Ltd., a homebuilder in the Austin, Dallas-Fort Worth, Houston, and San Antonio areas, employs hundreds of subcontractors. In 2003, Highland Homes began docking subcontractors' pay if they did not furnish proof of adequate general liability insurance coverage. Highland Homes contends that the deductions were to cover its own increased exposure from working with uninsured subcontractors. But in 2006, one subcontractor, Benny & Benny Construction Company, sued, alleging that Highland Homes had represented it would use the paycheck deductions to obtain liability insurance covering the subcontractor. Highland Homes denied Benny & Benny's claim but clarified its policy for the future.

In 2009, Benny & Benny amended its pleadings to add another subcontractor, Richard Polendo, and together they asserted claims on behalf of a class of more than 1,800 other subcontractors from whose pay Highland Homes had deducted amounts for insurance before clarifying its policy. The trial court certified the class under Rule 42(b)(3),[7] found Benny & Benny and Polendo to be adequate class representatives, appointed their lawyers as class counsel, and adopted a trial plan. Highland Homes appealed, but while the appeal was pending, the parties settled, subject to notice to the class and the trial court's review and approval.

---

[6] 417 S.W.3d 478 (Tex. App.—El Paso 2012).

[7] TEX. R. CIV. P. 42(b)(3).

3

The proposed terms were as follows. Highland Homes agreed to pay Benny & Benny $28,000 and to refund to the settlement class—members who did not opt out[8]—the total amounts withheld, plus each member's pro rata share of the difference between that total and $3,672,000 (less the amount for opt-outs). Highland Homes was to prepare from its records a list of class members with last known addresses and the amounts withheld from each. An administrator designated by the parties would then use computer software and other means to update the addresses. With the trial court's approval, formal notice would be sent to class members at the addresses thus determined, describing the claims being made on their behalf in the action, setting out the settlement terms, informing members of their rights, offering them the opportunity to opt out of the class, and setting a hearing for final approval of the settlement. If the settlement was finally approved, Highland Homes would issue refunds checks, sending them to existing subcontractors as it would their paychecks or by mailing checks to former subcontractors last known addresses.

The parties recognized that despite these efforts, some class members would not be located, and that others might refuse refunds. The class representatives agreed, on behalf of the settlement class members, that refund checks not negotiated within 90 days of issuance would be void, and that those and other undistributed refunds—referred to in the settlement as "unclaimed funds"—would be given to The Nature Conservancy ("the Conservancy") as a *cy pres* award.[9] The Conservancy is

---

[8] Also excluded were persons with whom Highland Homes had already settled, its employees, and class counsel.

[9] The phrase, *cy pres*, "derives from the Norman-French phrase, *cy pres comme possible*, meaning 'as near as possible.'" Wilbur H. Boies & Latonia Haney Keith, *Class Action Settlement Residue and* Cy Pres *Awards: Emerging Problems and Practical Solutions*, 21 VA. J. SOC. POL'Y & L. 267, 269 (2014). The Restatement (Third) of Trusts explains the *cy pres* doctrine as follows: "Unless the terms of the trust provide otherwise, where property is placed in trust to be applied to a designated charitable purpose and it is or becomes unlawful, impossible, or impracticable to carry out that purpose, or to the extent it is or becomes wasteful to apply all of the property to the designated purpose, the

a well-known, nonprofit, charitable organization operating worldwide and in Texas, whose stated mission is "to conserve the lands and waters on which all life depends."[10] According to Highland Homes, the Conservancy was chosen because it "share[s] Highland Homes' vision of green building and commitment to the environment." The State points out another connection—that Highland Homes' president was on the Conservancy's Texas volunteer board of trustees. In any event, Highland Homes received no tax deduction or other benefit from the award,[11] and the appropriateness of the Conservancy as the beneficiary of the award is not at issue.

Class representatives—again, on behalf of settlement class members—acknowledged that Highland Homes denied all liability in the action and agreed to a global release of Highland Homes and its affiliates[12] from liability on all claims either brought or that could have been brought. The parties agreed to use their best efforts to obtain judicial approval of their agreement, and that if it was substantively altered, a party adversely affected could terminate the agreement.

---

charitable trust will not fail but the court will direct application of the property or appropriate portion thereof to a charitable purpose that reasonably approximates the designated purpose." RESTATEMENT (THIRD) OF TRUSTS § 67 (2003). In the class action context, *cy pres* refers to awards "to an entity that resembles, in either composition or purpose, the class members or their interests" when "direct distributions to class members are not feasible—either because class members cannot be reasonably identified or because distribution would involve such small amounts that, because of the administrative costs involved, such distribution would not be economically viable." PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07, cmt b (2010). Despite the *Principles'* endorsement of such awards, *id*. § 3.07, issues regarding their legality and propriety have been raised. *See Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts, C.J., statement respecting denial of certiorari). We have not had occasion to address such issues, and none is raised in this case.

[10] *About Us: Vision and Mission*, THE NATURE CONSERVANCY, http://www.nature.org/about-us/vision-mission/-index.htm (last visited August 22, 2014).

[11] Highland Homes was authorized to deduct from the award any administration expenses that exceeded $30,000. It has made no such claim.

[12] Those affiliates were Horizon Homes, Ltd., Sanders Custom Builder, Ltd., Highland Homes–Houston, Ltd., Sanders Custom Builder–Houston, Ltd., Highland Homes–San Antonio, Ltd., and Highland Homes–Austin, Ltd.

In 2010, the parties presented their agreement to the trial court, which ordered that a detailed notice of the proposed settlement be mailed to class members at the addresses determined by the administrator. Of the 1,849 notices sent, 346 were returned as undeliverable, and 121 were re-mailed to different or forwarding addresses. After a final hearing, the trial court found that this notice was "the best . . . practicable under the circumstances", was "reasonable . . . fair, adequate, and sufficient", and "fully complie[d]" with Rule 42. The court also found that the settlement was "reasonable, fair, just, . . . adequate, [and] in the best interest of the Settlement Class Members, and that it satisfie[d] [Rule 42] and other applicable law". Finally, the court determined "that Plaintiffs and Class Counsel . . . have adequately represented the interests of the Settlement Class".[13]

Only eight class members requested exclusion. One explained that it had "suffered no losses from Highland Homes", and another stated that it did not "wish to participate in this legal matter." The trial court approved the settlement and rendered final judgment accordingly, "binding on all parties to the Settlement Agreement and on all Settlement Class Members . . . includ[ing] all . . . who did not timely request exclusion from the Settlement Class".

Aware that the State had once challenged a *cy pres* award as violative of the Unclaimed Property Act,[14] the parties notified the Attorney General of their proposed award of undistributed refunds to the Conservancy. Shortly after judgment was rendered but before it became final, the State intervened to object to the award, arguing that the undistributed residue should be retained for three

---

[13] Highland Homes paid class counsel's fee, set by the trial court at $1.8 million, over and above the $3,672,000 it paid the settlement class.

[14] *State v. Snell*, 950 S.W.2d 108 (Tex. App.—El Paso 1997, no writ).

years and then paid to the Comptroller to hold for any owners who eventually surfaced. The trial court refused to modify the judgment, and the State appealed.

The court of appeals agreed with the State that Section 74.308 of the Act prohibits the imposition of a 90-day deadline for negotiating settlement checks, and that Section 74.309 prohibits the *cy pres* award.[15] The court reversed and remanded the case to the trial court with instructions to strike those provisions from the settlement, and to order the claims administrator to hold undistributed refunds—totaling $465,557, according to the State—for three years and then remit them to the Comptroller.[16]

We granted Highland Homes' petition for review.[17]

## II

The Unclaimed Property Act defines property that is presumed abandoned and prescribes a process for reporting and delivering it to the Comptroller to be held perpetually for the owner. Two provisions, Sections 74.308 and 74.309, are aimed at preventing evasion of the Act. Under Section

---

[15] 417 S.W.3d 478, 488 (Tex. App.—El Paso 2012).

[16] *Id.* at 488.

[17] 56 Tex. Sup. Ct. J. 864 (Aug. 23, 2013). The plaintiffs did not participate in the proceedings in the court of appeals. The State argues that because Highland Homes has now disclaimed any interest in settlement funds, it lacks standing to complain of the court of appeals' modification of the settlement and the judgment predicated on it. But "[a] final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement". *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) (per curiam) (citations omitted). It should go without saying that when a party agrees to one judgment and a materially different one is rendered, the party is personally aggrieved and has standing to complain. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("For standing, a plaintiff must be personally aggrieved . . . ."). The *cy pres* award was a significant part of the settlement, and we cannot assume that Highland Homes would have reached the same agreement without it.

7

74.308, a recovery of property cannot be barred before the statutorily prescribed time passes for the property to be presumed abandoned—three years. The section states:

> § 74.308.        Period of Limitation Not a Bar
>
> The expiration, on or after September 1, 1987, of any period specified by contract, statute, or court order, during which an action or proceeding may be initiated or enforced to obtain payment of a claim for money or recovery of property, does not prevent the money or property from being presumed abandoned property and does not affect any duty to file a report required by this chapter or to pay or deliver abandoned property to the comptroller.[18]

Section 74.309 broadly prohibits any method of circumventing the Act. It states:

> § 74.309.        Private Escheat Agreements Prohibited
>
> An individual, corporation, business association, or other organization may not act through amendment of articles of incorporation, amendment of bylaws, private agreement, or any other means to take or divert funds or personal property into income, divide funds or personal property among locatable patrons or stockholders, or divert funds or personal property by any other method for the purpose of circumventing the unclaimed property process.[19]

The State argues that these provisions prohibit the *cy pres* award in this case. Specifically, under Section 74.308, the 90-day period for negotiating settlement checks does not preclude a presumption that amounts not paid to class members are abandoned, and Section 74.309 prohibits the diversion of settlement funds to the Conservancy.

But under the Act's express terms, neither provision applies in the circumstances before us. Chapter 74 of the Property Code, where the provisions are found, "applies to a holder of property

---

[18] TEX. PROP. CODE § 74.308.

[19] *Id.* § 74.309.

that is presumed abandoned under Chapter 72, Chapter 73, or Chapter 75."[20] Under Chapter 72—of the three, the only one involved in this case[21]—a "holder" is a person "in possession of property that belongs to another" or "indebted to another"[22] and tangible or intangible personal property is presumed abandoned

if, for longer than three years:

(1)      the existence and location of the owner of the property is unknown to the holder of the property; and

(2)      according to the knowledge and records of the holder of the property, a claim to the property has not been asserted or an act of ownership of the property has not been exercised.[23]

---

[20] *Id.* § 74.001(a); *accord id.* § 72.001(d) ("A holder of property presumed abandoned under this chapter is subject to the procedures of Chapter 74.").

[21] Chapter 75 "applies to mineral proceeds". *Id.* § 75.001(b). No mineral proceeds or depositories are involved in this case. Chapter 73 applies to "property held by financial institutions", the title of the chapter, and defines a "holder" as "a depository", *id.* § 73.001(a)(4)—that is, "a bank, savings and loan association, credit union, or other banking organization", *id.* § 73.002. The dissent argues that Section 73.102 in the chapter, defining when a check is presumed to be abandoned, nevertheless applies to all holders of checks. *Id.* § 73.102 ("A check is presumed to be abandoned on the latest of: (1) the third anniversary of the date the check was payable; (2) the third anniversary of the date the issuer or payor of the check last received documented communication from the payee of the check; or (3) the third anniversary of the date the check was issued if, according to the knowledge and records of the issuer or payor of the check, during that period, a claim to the check has not been asserted or an act of ownership by the payee has not been exercised."). We think the application of that section is limited along with the rest of the chapter. *See* TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . title (caption) . . . ."). Moreover, even if Section 73.102 applied, it would not nullify the class representative's authority. Having the authority on behalf of the class to arrange for payments of claims by check in the first place, the class representative also had the authority to prescribe the terms under which the checks would be paid.

[22] TEX. PROP. CODE § 72.001(e)(1), (3).

[23] *Id.* § 72.101(a). In *Melton v. State*, 993 S.W.2d 95, 98 (Tex. 1999), we stated that "'unknown,' as used in section 72.101(a) of the Property Code, does not mean completely unidentified."

Thus, Sections 74.308 and 74.309 apply only to a person who has property that the owner has not claimed or exercised ownership over for more than three years. In this case, the State asserts that the settlement administrator is holding payments owned by settlement class members.

The State's argument assumes that absent class members have neither asserted claims nor exercised acts of ownership in the litigation. But they have—through the class representatives. On behalf of all class members, including absent members, the class representatives asserted claims for refunds in the litigation, controlled the prosecution of those claims as owners, negotiated the terms for settling the claims, asserted claims for payments under the settlement agreement, and then released all claims. Class representatives' actions are those of class members, and are therefore binding on class members, including absent class members, so long as the requirements of due process are met. The United States Supreme Court has explained those requirements as follows:

> If [a] State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.[24]

---

[24] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) (footnote and citations omitted).

10

The judgment approving the settlement agreement in this case met all these conditions, and the State does not contend otherwise. The judgment approving that settlement is binding on all settlement class members.

Section 74.308 provides that a limitation on the time for initiating or enforcing a claim does not prevent property from being presumed abandoned. But that provision is inconsequential here. The property—settlement payments on refund claims—cannot be presumed abandoned, not because of the 90-day limitation on negotiating settlement checks, but because the property was not unclaimed. To the contrary, this property was claimed by the owners—all settlement class members—through their representatives. For the same reason, Section 74.309 does not apply in these circumstances. Chapter 74 does not apply when a claim to property has been asserted or an act of ownership exercised. It is of no consequence that several owners have not *collected* their property within the time period to which they agreed through class representatives. An owner need not actually *collect* his property to rebut the presumption of abandonment and render the Act inapplicable; he need only *claim* it. Nor is the settlement's labeling of undistributed refunds as "unclaimed funds" determinative; the refunds were, in fact, claimed.

The following example illustrates the flaw in the State's argument. Suppose Benny & Benny had never asserted class claims, had settled its own claims on the same terms, and then had decided to tear up the $28,000 settlement check in hopes of getting more business from Highland Homes. Surely the State could not insist that Highland Homes was nevertheless obligated to pay the $28,000 to the Comptroller until Benny & Benny broke down and took it. Suppose Benny & Benny made the same decision for Polendo, acting as his attorney-in-fact. The Act would not apply in either instance

11

because Benny & Benny and Polendo claimed the property, and thus it could not be presumed abandoned. The example is not far-fetched. One class member requested exclusion from the class because it had not been injured and another because it did not want to participate. Under Rule 42, the absent settlement class members participated in the litigation and settlement through their representatives as fully as the representatives did in person. The absent members agreed to the 90-day limitation on taking property they claimed, just as the class representatives individually did, and are as fully bound.

Furthermore, the settlement administrator no longer has property belonging to the settlement class members and is not indebted to them because they have agreed, through class representatives, to exercise their right to payment under the settlement agreement within 90 days. With court approval, class representatives were no less authorized to negotiate and agree to the terms of settlement than they were to agree to the amounts paid. Thus, the settlement administrator is no longer a "holder" to which Chapter 74 applies.

The State concedes that the Act would not apply to class settlement payments made only on application of class members, rather than mailed to last known addresses. "Because the unallocated funds are not owned by any identified individual," the State explains, "the Act would not apply . . . ."[25] We agree with the State's conclusion but not its reason. As noted above, one requirement for property to be presumed abandoned under the Act is that "the existence and location of the owner of the property is unknown to the holder of the property".[26] Class members in the situation the State

---

[25] State of Texas Brief on the Merits at 45.

[26] TEX. PROP. CODE § 72.101(a)(1).

posits certainly meet this requirement and are thus those for whom the Act's protections are intended. They own property in the same sense as the class members in this case, and most importantly, they ordinarily agree, through class representatives, to release all claims against the settling parties. If anything, the opposite of the State's argument should be true: the better the identification of class members, the fewer instances in which the Act applies. But class members who are hard to identify are no less owners of claims that class representatives are authorized to prosecute, settle, and release than are those class members who are easy to identify. Whether settlement payments are mailed to class members or must be applied for, the Act is inapplicable for the same reason: absent class members have asserted claims and exercised ownership through their class representatives. In both situations, there is no holder of abandoned property.

In support of its position the State cites several cases involving other states' laws in which the courts rejected a holder's efforts to retain property, pending the owner's compliance with specified conditions, rather than deliver it to the state as unclaimed.[27] In each of these cases, a potential future holder of property attempted to limit the conditions under which a potential future claimant to that property would be able to obtain it, an attempt held to be in derogation of the jurisdiction's unclaimed property law. Here, the settlement agreement does not purport to govern future claims to as-yet unidentified property—rather, it itself establishes the class's claim to

---

[27] *See Connecticut Mut. Life Ins. Co. v. Moore*, 333 U.S. 541, 546 (1948) (insurer sought to retain life insurance benefits until proof of entitlement made); *State by Furman v. Jefferson Lake Sulphur Co.*, 178 A.2d 329, 333-339 (N.J. 1962) (corporation sought to retain dividends until claimed); *Screen Actors Guild, Inc. v. Cory,* 154 Cal. Rptr. 77, 79-80 (1979) (union sought to retain unclaimed royalty checks); *People ex rel. Callahan v. Marshall Field & Co.,* 404 N.E.2d 368, 371-374 (Ill. App. Ct. 1980) (merchant sought to retain gift cards).

reimbursement. The State also relies on a prior decision of the court of appeals[28] and a recent decision of the Fifth Circuit,[29] both of which concluded that *cy pres* awards in class actions violate the Unclaimed Property Act. In neither case did the court appear to consider the arguments we find persuasive here. To the extent the two cases conflict with our decision today, they are disapproved.

The State's argument for the application of the Unclaimed Property Act in these circumstances cannot succeed unless class representatives' authority to act for class members under Rule 42 is disregarded. For that reason, the argument fails. The State warns that *cy pres* awards can be abused when they are nothing more than a judicial giveaway of private property, while Highland Homes and its *amici curiae* plead that *cy pres* awards benefit deserving, charitable causes. We need not take sides on this disagreement today. Though the State seems to consider the award to the Conservancy inappropriate, it does not make that challenge, assuming that it could. We agree with the State, however, that trial courts must be careful in class actions to protect class interests and scrutinize settlements. No one suggests that the trial court in this case failed in that responsibility.

---

[28] *State v. Snell,* 950 S.W.2d 108, 113 (Tex. App.—El Paso 1997, no writ).

[29] *All Plaintiffs v. All Defendants,* 645 F.3d 329, 331-332 (5th Cir. 2011).

*       *       *       *       *

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court is affirmed.

_____

Nathan L. Hecht
Chief Justice

Opinion issued: August 29, 2014