[Civ. No. 52676. Second Dist., Div. Three. Mar. 28, 1979.]

SCREEN ACTORS GUILD, INC., Plaintiff and Appellant, v.
KENNETH CORY, as State Controller, Defendant and Respondent.

112

**COUNSEL**

Berger, Kahn, Shafton & Moss, Craig S. Simon, Paul S. Berger, Charles H. Kahn and Anthony E. Shafton for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Warren J. Abbott, Assistant Attorney General, and Yeoryios C. Apallas, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**COBEY, Acting P. J.**—Plaintiff, Screen Actors Guild, Inc., appeals from a declaratory judgment decreeing that "residuals," partially held abroad by it on behalf of its members and pursuant to a specific bylaw, are held, nevertheless, subject to escheat to the State of California after they have been unclaimed for a period of seven years by their owners under the Unclaimed Property Law (UPL) administered by defendant, the State Controller. We perceive no error and will therefore affirm the judgment for the reasons stated hereafter.

### FACTS

The facts in this case are not in dispute. Plaintiff, a California corporation doing business in the County of Los Angeles, is a labor union representing approximately 30,000 actors, stuntmen, and other performers. Plaintiff, as the representative of such performers (who are also its members), negotiated collective bargaining agreements regulating the production of movies, television productions, foreign telecasting, theatrical exhibition of television motion pictures and commercials. Pursuant to these agreements since the early 1950's producers, under certain circumstances, transfer to plaintiff "residuals" for transmission by plaintiff to the entitled performers. These residuals constitute additional compensation to these performers for the reruns of television programming, foreign telecasting, theatrical exhibition of television motion pictures and supplemental market use of both television and theater motion pictures.

Customarily, residuals are delivered to plaintiff in the form of checks from producers, payable to the order of the entitled performers. Plaintiff mails these checks to the performers' last known addresses. If a check is returned, plaintiff then deposits it in an interest-bearing trust savings account. Plaintiff, through its "residual" department, spends approximately $250,000 a year in processing residuals and in attempting to locate the performers entitled to them. Under a specific section of plaintiff's bylaws, if after six years a member does not claim his residual funds, they are automatically assigned to plaintiff for the use of its membership.[1]

At the present time plaintiff holds some residuals which have not been claimed by the entitled performers for seven years or more.[2] Defendant

---

[1] In practice, plaintiff does not enforce this bylaw against its members.

[2] According to plaintiff's opening brief in this court, plaintiff paid defendant Controller, after the judgment under appeal was rendered, $80,022.17 in unclaimed residuals.

Controller contends that these residuals are due and payable to him under the UPL. Plaintiff has deposited part of these unclaimed residuals in a savings trust account at Toronto Dominion Bank of Canada, located in Canada.

## DISCUSSION

■ It seems clear that the UPL (Code Civ. Proc., §§ 1500-1582)[3] covers generally plaintiff and the residuals at issue here. Plaintiff appears to be an "association for business purposes of two or more individuals, whether or not for profit" (§ 1501, subd. (c); cf. *In re Monk's Club, Inc.* (1964) 64 Wn.2d 845 [394 P.2d 804, 807]) and the residuals constitute intangible personalty held by plaintiff in a fiduciary capacity for the benefit of its entitled members. (See § 1518, subd. (a).)

Plaintiff contends, however, that: (1) the UPL expressly does not apply to "[a]ny funds held only in a foreign country" (§ 1502, subd. (4)); (2) residuals constitute "[e]mployee benefit trust distributions" (see § 1501, subd. (j)) which, by reason of section 1521, subdivision (b), are not subject to escheat to the state; and (3) because of plaintiff's aforementioned bylaw, there are, in any event, no unclaimed residuals to escheat to the state.

We will now consider the validity of these three contentions seriatim. Plaintiff's residuals on deposit in the Canadian bank are held by it, a California corporation, located in the County of Los Angeles, within California. Under section 1501, subdivision (f), "holder" means, among other things, any person[4] in possession of property, subject to the UPL, belonging to another or who is a trustee in the case of a trust. Plaintiff is in constructive possession of the funds which it has deposited in the Canadian bank. It is also quite clearly a trustee with respect to the trust under which those funds are held in the Canadian bank. Consequently the right to these funds is held in California by plaintiff, even though the funds themselves are physically located, at least in part, in Canada. In sum, the residuals on deposit in Canada are not "funds held *only* in a foreign country." (Italics added.)

According to the aforementioned section 1501, subdivision (j), an "employee benefit trust distribution" includes intangible property distrib-

---

[3]All section references hereafter are to the Code of Civil Procedure.

[4]Under section 1501, subdivision (i), a "person" means, among other things, a business association.

utable to a participant from a trust or custodial fund established under a plan to provide health and welfare, pension, vacation, severance, retirement benefit, death benefit, profit sharing, employee savings, supplemental unemployment insurance benefits, or similar benefits. Under section 1521, subdivision (b), an employee benefit trust distribution does not escheat to the state if at the time the distribution becomes payable to a participant in an employee benefit plan, the plan is in existence and contains a provision for forfeiture of the distribution to a participant who cannot be found after a period of time specified in the plan. Plaintiff claims that the operation of its aforementioned bylaw on residuals makes those residuals exempt under the aforementioned section 1521, subdivision (b).

We do not agree. In the first place, the belated distribution of the unclaimed residuals to the entitled members does not constitute an "employee benefit trust distribution" within the meaning of section 1501, subdivision (j). Plaintiff's custodial trust fund was not established under a plan to provide the kind of employee benefits identified in this subdivision. Plaintiff's belated distribution of unclaimed residuals to its members constitutes nothing more than a payment of deferred compensation to them. In the second place, the forfeiture provided in plaintiff's aforementioned bylaw is not enforced in practice. This being so, plaintiff's plan for the disposition of these unclaimed residuals does not qualify for exemption under the aforementioned section 1521, subdivision (b). (Cf. *Bank of America* v. *Cranston* (1967) 252 Cal.App.2d 208, 211, 214 [60 Cal.Rptr. 336].)

In any event, plaintiff's bylaw on the disposition of unclaimed residuals is void as a private escheat law obviously designed to frustrate operation of the UPL. As noted by Justice Traynor some years ago with respect to the predecessor statute, the UPL has two principal objectives—"to protect unknown owners by locating them and restoring their property to them[5] and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed." (*Douglas Aircraft Co.* v. *Cranston* (1962) 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298].) Plaintiff's bylaw, if given effect, would deny to the state the benefit of the use of most of the unclaimed residuals. Thus it is contrary to a policy of express law, although not expressly prohibited. (See Civ. Code, § 1667;

[5]In this respect plaintiff may do a better job than the state because its search for such persons is more industry-oriented and more prolonged. It also appears that plaintiff provides a better interest return on these residuals than the state does.

*Winkleman* v. *Sides* (1939) 31 Cal.App.2d 387, 404-405 [88 P.2d 147].) Moreover, the UPL, as a law established for a public reason, cannot be contravened by a private agreement, which is what plaintiff's bylaw is. (Civ. Code, § 3513.) In short, a private escheat law cannot circumvent the effect of a public one. (*State* v. *Jefferson Lake Sulphur Co.* (1962) 36 N.J. 577, 596 [178 A.2d 329, 338-339], cert. den., 370 U.S. 158 [8 L.Ed.2d 402, 82 S.Ct. 1253].)[6]

## DISPOSITION

The judgment under appeal is affirmed.

Allport, J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 5, 1979. Mosk, J., was of the opinion that the petition should be granted.

---

[6]Plaintiff undoubtedly does occupy a different relationship to its members and they to each other than ordinarily obtains between and among holders and owners of unclaimed property. The Legislature may wish to make this circumstance the basis for a special exemption of the unclaimed residuals at issue, but in our view it has not accomplished this exemption in the present wording of the statute.