THE PEOPLE *ex rel.* EDGAR CALLAHAN, Director, Department of Financial Institutions, Plaintiff-Appellee, *v.* MARSHALL FIELD & COMPANY, Defendant-Appellant.

First District (5th Division)    No. 78-2013

Opinion filed April 11, 1980.

Donald G. Kempf, Jr., Howard J. Swibel and G. Christian Kronberg, all of Chicago (Kirkland & Ellis, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Jerome Webb, Assistant Attorney General, of counsel), for appellee.

Wilson & McIlvaine, of Chicago (Robert F. Forrer, Michael F. Csar, and William J. Ralph, of counsel), for amicus curiae Illinois Retail Merchants Association.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Marshall Field & Company (Field) appeals from the granting of summary judgment in a declaratory judgment action brought by the Director of the Department of Financial Institutions (Director). On appeal, Field contends that the Illinois Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1977, ch. 141, par. 101 *et seq.*) did not apply in general to unclaimed intangible personal property held by business associations prior to 1975. Field also contends that even if the Act did apply to such property, a failure of certain conditions precedent bars the State from taking custody of the monetary value represented by certain unclaimed gift certificates and credit memoranda.

The following facts are pertinent to a disposition of this appeal.

The Illinois Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1977, ch. 141, par. 101 *et seq.*) provides generally that certain described property be presumed abandoned by its owner. The holder of such presumably abandoned property must file a report each year with the Director describing the particular property and stating the name and last known address of the owner of said property. (Ill. Rev. Stat. 1977, ch. 141, par. 111.) Within 120 days from the filing of the report required under section 11 (par. 111), the Director must publish in newspapers of general circulation a notice listing persons appearing to be owners of abandoned property and stating that any property not duly claimed from the holder thereof will subsequently be placed in the custody of the Director. (Ill. Rev. Stat. 1977, ch. 141, par. 112.) Any presumably abandoned property not duly claimed from the holder by the owner after publication must be placed in the custody of the Director. (Ill. Rev. Stat. 1977, ch. 141, par. 113.) After properly recording the name and address of the owner and the amount due, the Director must transfer the abandoned property to the State Treasurer for deposit in the State Pensions Fund. (Ill. Rev. Stat. 1977, ch. 141, par. 118.) Section 18 (par. 118) further provides, however, that the Director shall retain a fund not exceeding $250,000 for prompt payment of claims made upon the Director by owners of the abandoned property. Any person claiming an interest in property delivered to the Director under the Act may file a claim thereto and no time limitation is placed upon filing of such claim. Ill. Rev. Stat. 1977, ch. 141, par. 119.

The Director commenced the instant action by seeking a declaratory judgment that the Act as originally enacted in 1961 applied to all unclaimed intangible personal property held by business associations. Specifically, the Director sought a determination that the 1961 Act was

applicable to unredeemed gift certificates and credit memoranda issued by Field in the regular course of business and to wages unclaimed by Field's employees. Field answered, denying that the Act applied generally to business associations prior to its amendment in 1975. Field also argued that unfulfilled conditions precedent in the gift certificates and credit memoranda prevented the State from taking custody of those items.

The trial court granted summary judgment in favor of the Director, and Field now appeals from that judgment.

I.

Field first contends that the Illinois Uniform Disposition of Unclaimed Property Act (Ill. Rev. Stat. 1977, ch. 141, par. 101 *et seq.*) did not apply generally to unclaimed intangible personal property held by business associations prior to the adoption of section 2a (Ill. Rev. Stat. 1977, ch. 141, par. 102a) in 1975.

As originally enacted in 1961 the Act covered certain unclaimed property held by banking or financial institutions (par. 102), life insurance companies (par. 103), utilities (par. 104), and courts or public officers (par. 108). The Act was also applicable to all intangible personal property held during a voluntary dissolution (par. 106) or by anyone acting in a fiduciary capacity (par. 107).

Section 9 of the Act, the "catch-all" provision, encompassed additional property as follows:

"All intangible personal property, not otherwise covered by this Act, including any income or increment thereon and deducting any lawful charges, that is held or owing in this State in the ordinary course of the holder's business and has remained unclaimed by the owner for more than 7 years after it became payable or distributable is presumed abandoned." Ill. Rev. Stat. 1977, ch. 141, par. 109.

Field argues that in order to trigger application of section 9 it is necessary that the holder be one of those specifically mentioned in sections 2, 3, 4, 6, 7 or 8. It is Field's position that section 9 does not apply to unclaimed intangible personal property held by any other entity in the ordinary course of business. We disagree.

The cardinal rule governing statutory construction is that we must give effect to the intention of the legislature as expressed in the statute. (*Young v. Mikva* (1977), 66 Ill. 2d 579, 363 N.E.2d 851; *Mallin v. Najarian* (1979), 76 Ill. App. 3d 441, 395 N.E.2d 172.) The intention of the legislature should be sought primarily from the language employed. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 256 N.E.2d 758.) Where the language of the statute is clear and unambiguous, our only

function is to enforce the law as enacted by the legislature. (*Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 389 N.E.2d 151.) Moreover, we are not authorized to depart from the plain language of a statute by reading in exceptions, limitations or conditions which conflict with the clearly expressed legislative intent. *Certain Taxpayers v. Sheahen.*

■ We believe the language of section 9 is clear, unambiguous and susceptible to only one logical interpretation. In order to be covered by this section the property must be: (1) intangible personal property; (2) not otherwise covered by the Act; (3) held or owing in this State in the ordinary course of the holder's business; and (4) unclaimed by the owner for a specified period. The legislature did not indicate that only holders of subject property under other sections of the Act would be covered by section 9. The section refers to property held in the holder's ordinary course of business. We take this requirement to mean that any entity holding unclaimed intangible personal property in the ordinary course of its business must comply with the Act.

■ ■ Even were such a restrictive interpretation of section 9 as offered by Field available, we would feel compelled to reject it. In ascertaining legislative intent, we may look to the reason and necessity for the law, the evil to be remedied and the purpose to be obtained. (*People ex rel. Moss v. Pate* (1964), 30 Ill. 2d 271, 195 N.E.2d 641.) We must consider the entire statutory scheme. (*Mallin v. Najarian* (1979), 76 Ill. App. 3d 441, 395 N.E.2d 172.) Where two or more constructions may be placed upon a statute, we must select that construction which makes the statute both useful and logical. *Yellow Equipment & Terminals, Inc. v. Lewis* (1976), 35 Ill. App. 3d 875, 342 N.E.2d 426; *Stewart v. Amoco Oil Co.* (1979), 72 Ill. App. 3d 330, 389 N.E.2d 1323.

The interpretation of section 9 advanced by Field would be in conformity with neither the policy of the Act nor logic itself. The policy behind the Uniform Disposition of Unclaimed Property Act, upon which the Illinois Act is modeled, is described in the Commissioner's Prefatory Note as follows:

"The Uniform Act is custodial in nature—that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. Although the actual possibility of his presenting a claim in the distant future is not great, the owner retains his right of presenting his claim at any time, no matter how remote. State records will have to be kept on a permanent basis. In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and the title to the property passes to the state. Not only does the custodial type of statute more adequately preserve the

owner's interests, but, in addition, it makes possible a substantial simplification of procedure." 8 Uniform Laws Annotated 74 (1972).

In addition to protecting the rights of unknown owners, the Uniform Act gives the State, rather than the holder of unclaimed property, the benefit of the use of such property. See *Douglas Aircraft Co. v. Cranston* (1962), 58 Cal. 2d 462, 374 P.2d 819, 24 Cal. Rptr. 851.

We believe the legislature, in keeping with the obvious policy of the Act, intended by the adoption of section 9 to protect the owners of all intangible personal property held by anyone in the ordinary course of business.

In addition to being contrary to the overall policy of the Act, Field's interpretation would result in an illogical statutory scheme. For instance, business associations holding one isolated item of covered property as a fiduciary under section 7 would consequently be required to report all unclaimed intangible personal property held while a business association not holding any in a fiduciary capacity would be free to retain any unclaimed intangible personal property. We shall not attribute such an intention to our legislature.

In further support of its contention Field argues that the legislature's refusal to enact section 5 of the Uniform Act in 1961 evidences an intent that unclaimed property held by business associations not be subject to the Illinois Act. The rejected section 5 of the Uniform Act reads as follows:

"Any stock or other certificate of ownership, or any dividend, profit, distribution, interest, payment on principal, or other sum held or owing by a business association for or to a shareholder, certificate holder, member, bondholder, or other security holder, or a participating patron of a cooperative, who has not claimed it, or corresponded in writing with the business association concerning it within 7 years after the date prescribed for payment or delivery, is presumed abandoned if:

(a) It is held or owing by a business association organized under the laws of or created in this State; or

(b) It is held or owing by a business association doing business in this State, but not organized under the laws of or created in this State, and the records of the business association indicate that the last known address of the person entitled thereto is in this State."

We do not agree that by refusing to enact the above provision the legislature intended to release business associations in general from the terms of the Act. As discussed above, we believe business associations were already covered by section 9. The Illinois Comments to section 5 (Smith-Hurd Annotated Statutes) explain that:

"The subject matter of section 5 of the Uniform Act will probably

be covered by either section 107 or section 109 of our Act." Ill. Ann. Stat., ch. 141, par. 105 (Smith-Hurd 1964).

The cases cited by Field in support of its theory concerning the significance of the deleted section do not require that we hold otherwise. We read those cases to hold that deletion of a proposed provision is a factor to consider, but is not conclusive, as to legislative intent. In the instant case the legislative intent, is made manifest in section 9.

Field further argues that the addition of section 102a (Ill. Rev. Stat. 1977, ch. 141, par. 102a) in 1975 indicates that unclaimed intangible personal property held by business associations was not previously subject to the Act. Section 102a provides as follows:

"Business associations shall report all property and any earnings thereon which has remained unclaimed for 7 years and is therefore presumed abandoned. This property shall consist of, but is not limited to: (1) unclaimed wages, (2) deposits or payment for repair or purchase of goods or services, (3) credit checks or memos, or customer overpayments, (4) stocks, bonds and interest and dividends therefrom, (5) unidentified remittances, unrefunded overcharges, (6) unpaid claims, unpaid accounts payable or unpaid commissions, and (7) credit balances-accounts receivable, checks written off, employee bond buying and profit-sharing." Ill. Rev. Stat. 1977, ch. 141, par. 102a.

Field argues that section 2a would be meaningless and add nothing to the Act if unclaimed intangible personal property held by business associations was already covered by section 9. However, section 2a requires business associations to report "all property" which has remained unclaimed for the statutory period while section 9 refers only to intangible personal property. It is thus apparent that section 2a imposed requirements upon business associations quite different from those of section 9.

In final support of its contention that intangible personal property held by business associations was not covered by section 9, Field argues that a contrary interpretation would render much of the Act superfluous. Specifically, Field argues that if section 9 includes intangible personal property held generally by business associations, then section 9 would also cover all the property referred to in sections 2, 3, 4, 6, 7 and 8. Thus, there would be no reason for the legislature to have included those latter sections. However, examination of those sections reveals that the matters therein are not covered by section 9 and that those sections contain distinct requirements. Section 2 encompasses tangible as well as intangible property held by a banking or financial institution. Certain of the property under sections 2 and 3 will not be considered abandoned when the owner has corresponded with the holder concerning the

property. Section 9 makes no such allowance. Section 6 establishes only a two-year period for abandonment of property distributable in a voluntary dissolution. Section 7 applies to property held in a fiduciary capacity but does not require, unlike section 9, that the property be held in the ordinary course of the holder's business. Moreover, such property is not considered abandoned where the owner has dealt with or "indicated an interest" in the property. Finally, section 8 applies to "funds" as well as intangible personal property and requires only a seven-year period for abandonment.

We must therefore reject Field's theory that by holding section 9 generally applicable to intangible personal property held by business associations we would negate the significance of any other sections of the Act.

## II.

Field's second contention is that regardless of our interpretation of section 9, the Act does not cover gift certificates issued since 1964 and credit memoranda issued since 1965. Until 1975 the statutory period for abandonment under section 9 was 15 years. Since 1964, the gift certificates issued by Field have contained the following condition:

> "Marshall Field & Company will accept this certificate from bearer, if presented within ten years from the date of issue in exchange for merchandise having the value set forth below."

Since 1965 the credit memoranda have contained a similar condition:

> "Not valid unless presented for redemption for cash or merchandise within one year from the date hereof. Not transferable."

In 1975 the legislature reduced the statutory period for abandonment under section 9 to 7 years. Section 2a, adopted in 1975, also contained a 7-year period for abandonment. In 1976 Field reduced the presentation period on its gift certificates from 10 years to 5 years. Field argues that where the owner has failed to present a gift certificate or credit memorandum within the time period stated thereon, the State is barred from taking custody of the property.

■ The question of whether an owner's failure to claim property within the time specified by the holder will bar the State from taking custody of that property under the Illinois Uniform Disposition of Unclaimed Property Act is one of first impression. We recognize that when faced with such a question under similar statutes, our sister jurisdictions have not been uniform in their decisions. After a careful review of the cases on point we are convinced that the better reasoned ones are those holding that the failure of an owner to make a timely claim will not prevent the State from taking the property from the holder as custodian.

In *Connecticut Mutual Life Insurance Co. v. Moore* (1948), 333 U.S. 541, 92 L. Ed. 863, 68 S. Ct. 682, the United States Supreme Court held that the State of New York could take custody of unclaimed insurance proceeds even though the owners of the policies had failed to perform certain conditions precedent to being paid. The court stated:

"The fact that claimants against the companies would under the policies be required to comply with certain policy conditions does not affect our conclusions. The state may more properly be custodian and beneficiary of abandoned property than any person.

\* \* \* When the state undertakes the protection of abandoned claims, it would be beyond a reasonable requirement to compel the state to comply with conditions that may be quite proper as between the contracting parties. *The state is acting as a conservator, not as a party to a contract.*" (Emphasis added.) 333 U.S. 541, 546-47, 92 L. Ed. 863, 869, 68 S. Ct. 682, 686.

Moreover, where a private agreement between the parties is in fundamental conflict with public policy as established by the legislature, the private agreement must fall. (See *Screen Actors Guild, Inc. v. Cory* (1979), 91 Cal. App. 3d 111, 154 Cal. Rptr. 77; *State v. Jefferson Lake Sulphur Co.* (1962), 36 N.J. 577, 178 A.2d 329.) As in *Cory* and *Jefferson Lake Sulphur Co.* the holder's theory here would result in a private escheat law whereby the holder rather than the State would enjoy the benefit of the unclaimed property. Such a result would be contrary to the obvious purpose and policy of the Act.

Finally, we note that were we to accept Field's theory the result might very well be a race between holders and the legislature to adopt even shorter time periods for claims and presumption of abandonment. The "unseemliness" of such a race is obvious. See *State v. Jefferson Lake Sulphur Co.*

In light of our disposition of Field's contention we need not consider the issue of whether Field's acceptance of at least some gift certificates and credit memoranda after the respective time limits operates as a general waiver of the conditions precedent.

For the foregoing reasons the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.