# IN THE SUPREME COURT OF TEXAS

══════════════

No. 12-0604

══════════════

HIGHLAND HOMES LTD., PETITIONER,

v.

THE STATE OF TEXAS, RESPONDENT

══════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

══════════════════════════════════════════════

JUSTICE DEVINE, joined by JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE BOYD, dissenting.

The Unclaimed Property Act (UPA) protects the property rights of identifiable owners whose property cannot be delivered or returned because the owner cannot be found. *Melton v. State*, 993 S.W.2d 95, 97-98 (Tex. 1999). Generally, when those circumstances persist for three years, the property in the possession of another is presumed abandoned by its owner and must be turned over to the State for safekeeping under the UPA. TEX. PROP. CODE § 72.101. The State then assumes responsibility for holding the property until the rightful owner can be located. *Id*. § 74.304.

Texas Rule of Civil Procedure 42, on the other hand, "is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment." *Sw. Refining Co. v. Bernal*, 22 S.W.3d 425, 437 (Tex. 2000). As a mere procedural device, the class-action rule is not intended "to enlarge or diminish any substantive rights or obligations of any parties to a civil action" but to facilitate the efficient adjudication of such rights and obligations. *Id*. Here, however, the Court uses our class-action rule to diminish the substantive property rights of the

missing property owners and in so doing also marginalizes the UPA's public policy concerns. Because the Court's application of Rule 42 conflicts with the UPA's explicit language, I respectfully dissent.

As the Court acknowledges, the UPA prohibits private limitation and escheat agreements that seek to evade the process for reporting and delivering abandoned property to the State. *See* ___ S.W.3d at ___ (quoting TEX. PROP. CODE §§ 74.308-.309). Section 74.308 states that a contractual limitation period cannot be used to defeat the abandoned-property presumption and thus circumvent the UPA:

> The expiration [] of any period specified by contract, statute, or court order, during which an action or proceeding may be initiated or enforced to obtain payment of a claim for money or recovery of property, does not prevent the money or property from being presumed abandoned property and does not affect any duty to file a report required by this chapter or to pay or deliver abandoned property to the comptroller.

TEX. PROP. CODE § 74.308. Section 74.309 prohibits private escheat agreements that seek to divide funds among locatable interest holders, while disenfranchising owners who cannot be found, and generally prohibits the circumvention of the unclaimed property process through the diversion of funds by any method:

> An individual, corporation, business association, or other organization may not act through amendment of articles of incorporation, amendment of bylaws, private agreement, or any other means to take or divert funds or personal property into income, divide funds or personal property among locatable patrons or stockholders, or divert funds or personal property by any other method for the purpose of circumventing the unclaimed property process.

*Id.* § 74.309. Highland and the class representative negotiated a settlement of the class claims that included the following *cy pres* provision for the disposition of any class members unclaimed share of the settlement fund:

> The parties agree to a *cy pres* distribution of unclaimed funds owed to class members that cannot be located or who fail to negotiate the settlement check within ninety (90) days of its issuance. The amount of these unclaimed funds will not be paid to individual Class Members. Such *cy pres* distribution shall be made to the Nature Conservancy, a non-profit, charitable organization operating in Texas.

In my view, the above provision includes both a limitation period and private escheat agreement prohibited under the UPA.

The Court apparently agrees that the UPA would invalidate the settlement agreement's 90-day limitation period and private escheat provision, if it applied to the agreement. The Court concludes, however, that Highland is no longer a "holder" of any identified class member's property and that the settlement agreement does not concern abandoned property, and thus, the UPA does not apply. The Court reasons that unclaimed settlement funds have not been abandoned because the class representative has exercised ownership over the property on the class members' behalf by entering into the agreement with Highland. Such reasoning renders the statutory prohibitions against private escheat agreements and contractual time limits meaningless. Section 74.308 expressly prohibits prospectively setting contractual time limits on when property can be claimed, and section 74.309 expressly prohibits private agreements that divert prospective property interests to someone other than the true owner.

While I agree that the class representative exercised authority over the class claims and was authorized to settle, its authority did not extend to the subsequent disposition of the settlement checks, which are the individual class members' property rights created under the settlement agreement. Quite simply, the class representative lacked authority to claim, spend, or give away any other class member's settlement check. The Court mistakenly conflates the representative's authority over the class claims with the settlement proceeds it negotiated on behalf of the individual

3

class members. Because the class representative could not assert any missing class member's ownership interest in the fund or cash their individual checks, in my view, it did not exercise ownership over such property. When the property went unclaimed, it was abandoned within the UPA's meaning, notwithstanding the *cy pres* provision. Remarkably, the Court's explanation is that the "'unclaimed funds' . . . were, in fact, claimed," ___ S.W.3d at ___, even though the class representative lacked authority to endorse the checks or otherwise claim the funds belonging to another class member.

The Property Code provides that property is presumed abandoned (and thus subject to the UPA) if "for longer than three years," no claim has been asserted or act of ownership exercised. TEX. PROP. CODE § 72.101(a). Because the property interest here is represented by a check, the question is when does the three-year period begin to run on a check. For purposes of the UPA and the three-year period, at least, a check represents a property right that is distinct from the underlying obligation or transaction it represents. Property Code section 73.102 specifically addresses the commencement question, stating that the period begins running on the date (1) "the check was payable," (2) "the issuer or payor of the check last received documented communication from the payee," or (3) "the check was issued." At the earliest then, the three-year period commenced when the checks were issued.

Now the Court argues that Chapter 73 of the Property Code does not apply in this case because it applies only to "holders" that are "depositories," such as a bank, credit union or the like, *see* ___ S.W.3d at ___ n.21, but Chapter 73 does not say that. Although parts of Chapter 73 specifically address depositories as holders, section 73.102 does not. It discusses checks—and the abandonment of checks—in terms of the conduct and knowledge of the "issuer" or "payor," rather

4

than the conduct or knowledge of the depository on which the checks are drawn. That only makes sense, of course, because for purposes of unclaimed property, the bank has no way of knowing whether a customer has written a check and if so, to whom, until the payee presents the check for payment. Section 73.102 can only apply to (and therefore define the three-year period for) scenarios in which the issuer/payor is the "holder," not the depository.

The Court ultimately concludes that the unclaimed checks are not abandoned property because the class representative has asserted a claim or exercised a right of ownership over the class members' claims by negotiating the class settlement. *See* ___ S.W.3d at ___ (noting that "the class representatives asserted claims for refunds in the litigation, controlled the prosecution of those claims as owners, negotiated the terms for settling the claims, asserted claims for payments under the settlement agreement, and then released all claims"). But that all occurred before the three-year period for determining abandonment of the checks even commenced. The assertion of a claim or the exercise of an act of ownership occurring *before* the three-year period begins is, I submit, meaningless. Because the class representative asserted a claim or exercised ownership, if at all, before the checks were issued, and because the class representative cannot assert a claim or exercise ownership over the checks *after* they were issued, the checks must be presumed abandoned under section 72.101(a), if not cashed within three years.

The UPA prevents individuals or entities that hold property belonging to others from prospectively contracting for the disposition of such property, if unclaimed by the rightful owner. Thus, for example, landlords, banks, utilities, and insurance companies cannot contract for the future disposition of unclaimed funds owed to their respective tenants, customers, or policyholders in circumvention of the UPA. The Court here, however, imbues the class representative in class-action

litigation with special power to make such disposition. The UPA does not permit this exceptional treatment.

The Act clearly prohibits parties from making an agreement that prevents "money or property from being presumed abandoned." TEX. PROP. CODE § 74.308. But the Court reasons that this case does not concern abandoned property and thus does not implicate the UPA because the parties have previously agreed to the disposition of unclaimed property. The UPA's prohibitions against contractual time limits and private escheat agreements are meaningless, however, if they can be manipulated so easily. It makes no sense to hold that the UPA, which prohibits contractual limitations on unclaimed property and the presumption of abandonment, does not apply when the parties have agreed to the future disposition of unclaimed property. Contrary to the Court's analysis, such an agreement is not an exercise of ownership over the unclaimed property and does not prevent a presumption of abandonment.

No other court has taken such a fanciful approach to private escheat agreements. *See Conn. Mut. Life Ins. Co. v. Moore*, 333 U.S. 541, 546 (1948) (rejecting forfeiture of life insurance proceeds in favor of New York's unclaimed property law); *People ex rel. Callahan v. Marshall*, 404 N.E.2d 368, 373 (Ill. App. Ct. 1980) (rejecting contractual time limitations on gift cards and credit memoranda in favor of Illinois' unclaimed property law); *Div. of Unclaimed Prop. v. McKay Dee Credit Union*, 958 P.2d 234, 240 (Utah 1998) (finding that Utah's unclaimed property law takes precedence over statute allowing businesses to purge debt records). For example, a California appellate court struck down a provision in a contract between a health insurer and its subscribers, requiring the subscribers to cash their claim checks within six months or forfeit their right to the funds. *Blue Cross of N. Cal. v. Cory*, 120 Cal. App. 3d 723, 739-40 (Cal. Ct. App. 1981). The court

6

reasoned that "[California's UPA], as a law established for a public reason, cannot be contravened by a private agreement." *Id.* at 740. Similarly, the court reasoned that a union representative, acting on behalf of union members, could not agree to divert the value of individual members' royalty checks into an account for the union's general benefit, if the checks were not cashed within a designated time. *Screen Actors Guild, Inc. v. Cory*, 91 Cal. App.3d 111, 115-16 (Cal. Ct. App. 1979). And despite the approval of a majority of shareholders, the New Jersey Supreme Court struck down an amendment to a corporation's charter that allowed the corporation to retain stock dividends if they went unclaimed for three years. *State by Furman v. Jefferson Lake Sulphur Co.* 178 A.2d 329, 338-39 (N.J. 1962), *cert. denied*, 370 U.S. 158 (1962). The court reasoned that even with the assent of shareholders, the amendment violated New Jersey's UPA, because a corporation cannot alter its charter to give itself powers that are "obnoxious to any applicable general law or to public policy." *Id.* at 335-36.

The Court attempts to distinguish these cases by suggesting that the class members' property interests here were conditional and thus subject to forfeiture under the settlement agreement, unlike the shareholder's right to a dividend check, the union member's right to the royalty check, or the insured's right to a benefits check. ___ S.W.3d at ___ & n.27. I fail to see how the class members' property interests here are any different or why they are entitled to any less protection under our UPA. Highland acknowledged in the settlement agreement that it "owed" the identified class members the funds represented by the checks and that, if a check were "not negotiated within ninety (90) days of its issuance, the funds owed to that class member [would] be considered 'unclaimed funds.'" The agreement provided further for "a *cy pres* distribution of unclaimed funds owed to class members that cannot be located or who fail to negotiate within ninety (90) days of [the check's]

7

issuance." The agreement thus acknowledges the members' property interests and seeks to redirect those interests under the *cy pres* provision.  Although parties generally have the right to contract as they see fit, they do not have the right to make agreements that violate the law or public policy.  *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 129 & n. 11 (Tex. 2004).  This agreement violates the law because the parties have substantively agreed to the redisposition of future, unclaimed property—a private escheat agreement prohibited by the UPA.

Finally, the Court argues that the UPA should not apply because it intrudes on the class representative's authority to act for class members under Rule 42.  ___ S.W.3d at ___.  Again, I disagree.  As already discussed, the class representative's authority extends to the settlement of the class claims but not to the disposition or forfeiture of the individual class member's vested property rights.  The class action rule may authorize the representative to settle the class member's claim, but it does not authorize the representative to take away the member's share of that settlement once it has vested.

I question whether the Court would be so favorably disposed to the class representative's power to redistribute unclaimed settlement proceeds if such proceeds were payable to the representative rather than a charity.  I suspect that the Court's analysis is influenced more by where the unclaimed funds end up than by how they got there.  Why should money escheat to the State, if a charity can benefit from unclaimed settlement proceeds?  The problem, as I see it, is two fold.  First, and foremost, under the terms of this settlement agreement, the money belongs to the missing class members, not to Highland or the class representative.  The missing parties' property rights can only be preserved if the State is permitted to act as their custodian under the UPA.  Second, even if this were an appropriate case for a *cy pres* distribution (and I do not believe it is), the *cy pres*

8

distribution here is contrary to existing law on the subject.

As to this latter point, the Court acknowledges the State's warning that *cy pres* awards "can be . . . nothing more than a judicial giveaway of private property" but suggests that the State either lacked standing to challenge the appropriateness of the award in this case or waived the complaint. ___ S.W.3d at ___. Again, I disagree. The State has standing to, and did in fact, challenge the *cy pres* distribution to The Nature Conservancy in both the court of appeals and this Court. *See In re Lease Oil Antitrust Litig.* 570 F.3d 244, 250-51 (5th Cir. 2009) (determining that State of Texas had "direct, substantial, legally protectable interest" to challenge *cy pres* distribution in class action suit); *see also* Brief for Respondent at 40 ("The requisite nexus between the mission of the *cy pres* recipient and the purpose of the class action is absent here.").

*Cy pres* distributions in class actions are appropriate when there is money remaining in a settlement fund after identifiable class members have been compensated. *Klier v. Elf Atochem N. Am.*, Inc., 658 F.3d 468, 474-75 (5th Cir. 2011). Typically, this might occur when a defendant does not have sufficient information or resources to determine the precise size of the class or the identity of its members and thus relies on a claims-form process to qualify membership. In that situation, any unallocated surplus in the settlement fund might appropriately be disposed of under a *cy pres* provision. *See, e.g., Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 813 (5th Cir. 1989) (allocating remainder of settlement fund where 500 potential class members were notified, but only 228 proved their right to the fund by filling out a claim form and all 228 were fully compensated). In this case, however, all of the identifiable class members were not compensated.

Highland used its business records to precisely tailor the size of the settlement fund, reserving the right to reduce the fund by the amounts attributable to class members who opted-out. Highland

9

then used these same records to issue checks to each settling class member, who under the settlement agreement were designated as the owners of their particular share of the fund and were issued checks representing that share. The *cy pres* provision then subsequently forfeited that property interest if the class member did not cash the issued check within 90 days. Highland did not require, nor need, the class members to prove their right to the fund as Highland possessed all the relevant information in its own business records. It therefore allocated the entire fund to identifiable class members by issuing each of them a check for the specific amount owed. There accordingly was no unclaimed surplus to which an appropriate *cy pres* distribution could attach.

Even had there been a surplus, the *cy pres* provision in this agreement was clearly inappropriate for yet another reason. In class actions, the doctrine of *cy pres* is supposed to distribute funds "for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Klier,* 658 F.3d at 474. At the very least, the *cy pres* distribution should "reasonably approximate" the class members' interests. *In re Lupron Mktg. & Sales Practices Litig.* 677 F3d 21, 33 (1st Cir. 2012). Whether the *cy pres* distribution reasonably approximates the class members' interests is determined by analyzing a number of factors such as the purposes of the underlying statutes violated, the nature of the class members' injury, the class members' characteristics and interests, the geographical scope of the class, the reasons why the settlement funds have yet to be claimed, and the relationship of the *cy pres* recipient to the class. *Id.* at 33.

The Court acknowledges that The Nature Conservancy was chosen as the *cy pres* recipient because it "share[s] Highland Homes' vision of green building and commitment to the environment." ___ S.W.3d at ___ (alteration in original). But Highland's vision or preferences are irrelevant

10

because the settlement fund does not belong to Highland. It belongs to the class members whose claims created the fund. *See Klier,* 658 F.3d at 474 ("The settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members.") (citing *Principles of the Law of Aggregate Litigation*, 2010 A.L.I. § 3.07 cmt. b). As much as I respect and admire the mission of The Nature Conservancy, I fail to see its connection to the subcontractors' suit, which alleged that Highland misrepresented that liability insurance would be provided for uninsured subcontractors through payroll deductions.

The UPA provides that property is presumed abandoned if ownership is not exercised for a period of three years. It requires that such property be turned over to the State. The UPA further prohibits contracts that seek to limit the presumptive period or otherwise dispose of unclaimed property through private escheat agreements. In this regard, the Act prohibits agreements that "divert funds" or "divide funds . . . among locatable" persons or use "any other method for the purpose of circumventing the unclaimed property process." TEX. PROP. CODE § 74.309. Highland and the class representative agreed "to a cy pres distribution of unclaimed funds owed to class members" who, although known, could not be found to cash their settlement checks within 90 days of issuance. I agree with the court of appeals that this *cy pres* provision is essentially a private escheat agreement prohibited by the UPA. 417 S.W.3d 478, 486-87 (Tex. App.–El Paso 2012). I accordingly would affirm the court of appeals' judgment. Because the Court does not, I respectfully dissent.

_____
John P. Devine
Justice

Opinion Delivered: August 29, 2014

11