
FILED
**August 7, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-15-00436-CV
6397249
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/7/2015 9:12:41 AM
JEFFREY D. KYLE
CLERK

**No. 03-15-00436-CV**

---

**In the Third Court of Appeals**
**Austin, Texas**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
8/7/2015 9:12:41 AM
JEFFREY D. KYLE
Clerk

---

**Charles O. "Chuck" Grigson,**

**Gerald Hooks, Jr. and Lesly Hooks.**

*Appellants,*

v.

**The State of Texas, The Texas Department of Insurance, The Texas Commissioner of**
**Insurance, and Farmers Group, Inc., Farmers Texas County Mutual Insurance Company,**
**Texas Farmers Insurance Company, and Fire Insurance Exchange, et al..**

*Appellees.*

---

On Appeal from the 261st Judicial District Court, Travis County, Texas
Cause No. D-1-GV-02-002501

---

**Response of Appellants Gerald Hooks, Jr. and Lesly K. Hooks to the**

**Appellees' Joint Motion to Dismiss Gerald and Leslie Hookses' Appeal for**

**Lack of Appellate Jurisdiction and Request for Expedited Consideration of Motion**

---

Joseph C. Blanks
blanxlex@earthlink.net
Joseph C. Blanks, P.C.
P.O. Box 999
Doucette, Texas 75942-0999
409-837-9707
Fax 877-563-7052

**Counsel for Intervenors–Appellants**
**Gerald Hooks, Jr., and Lesly K. Hooks**

**To the Honorable Court of Appeals,**

Intervenors Gerald Hooks, Jr., and Lesly K. Hooks oppose the Appellees' Joint Motion to Dismiss [the Hooks Appeal] For Lack of Appellate Jurisdiction. In addition to the points argued below, the Hooks join in and adopt by reference, as if fully set out herein, the Response of Appellant Grigson to the Appellees' Joint Motion to Dismiss his appeal for lack of appellate jurisdiction.

**The Jurisdictional Question**

The Preliminary Approval Order (the "Order")-certifies the settlement classes. Despite the Order's provisions that track Rule 42, the Appellees argue that the district court's order does not certify a class. If they mean that the language of the Order did not contain the magic words, "I hereby certify," they are correct. However, the Appellees rely on the form of the Order, the form they manufactured in an attempt to abrogate this Court's jurisdiction. They insist that the settlement preliminarily approved in 2003 and the class certified then exists today, essentially unchanged; therefore, the classes need no new certification. That is simply not true. Between 2003 and 2015 the class membership changed, the claims being released changed, the law controlling disposition of uncollected funds changed, and evidence of collusion and adequacy of representation emerged, all  to such an extent that the new certification was inevitable. A chronological comparison follows.

**History of the Three Settlements and the Three Settlement Classes**

The 2015 settlement blessed by the district court's order of preliminary approval required its new certification. That is precisely what the Appellees asked the court to do in their 2013 joint motion for preliminary approval of the second settlement. That is what the Appellees asked the court to do in 2015 with their third proposal. The Appellees' proposed order, Exhibit A to

their 2015 joint motion for preliminary approval of the third settlement contains the words "the court herby certifies the following settlement classes." However, at the very end of the preliminary approval hearing the Appellees' presented and the district court signed an order that removed these words. Despite the deletion of those words, the Order makes all the requisite Rule 42 findings needed for certification.

**1. The First Settlement Agreement and Certified Settlement Class**

The State and Farmers ignore the Rule 42 findings in the appealed order, arguing that the 2003 certification endures and supports the 2015 settlement. It did not endure because the 2003 settlement to which it is inextricably intertwined did not endure. The State and the Farmers did not give the class notice of the 2003 certification and approval of the 2003 settlement . And they did not move for final approval. The Appellees abandoned the 2003 class, abandoned the 2003 settlement, and one may fairly say, abandoned their respective duties as class representative, as class counsel, and as proponents of the 2003 deal.

**2. The Second Settlement Agreement and Proposed Settlement Class**

In 2013, the Appellees made a second agreement to settle. It differed from the first. They called it the "Second Amended Settlement Agreement and Stipulation" (the "SASAS"). The Appellees jointly moved the district court for preliminary approval. By the proposed order they attached to their motion, Appellees asked the district court to certify a settlement class for this second proposed settlement. The court refused. The district judge observed that the class representative and class counsel ignored a decade's lost time value of money. The district court said that the claims raised in Beaumont in the already–certified Geter class action should be "carved-out" of the second proposed settlement. Appellants constructively criticized the second proposed

notice. The court urged the parties to mediate their disagreements and come back with a new settlement agreement that addressed the concerns the court had articulated and objections the Intervenors raised.

**3. The Third Settlement Agreement and Newly Certified Settlement Class**

The Appellees negotiated a new deal in 2015, deal number three. In another joint motion for preliminary approval, they presented their third settlement agreement, complete with a proposed order that "hereby certifies" a new class.[1] The 2015 settlement agreement consists of the rejected 2013 agreement—itself different from the 2003 agreement—modified further with updates and supplements so complex that few class members will read or understand the terms.

In summary, the 2015 deal alters the payouts and the claims released. It improperly awards the "unclaimed," i.e., uncollected settlement funds to the class representative, raising questions of adequacy of representation and collusion. And the passage of time shrank the settlement class, diminishing its membership by almost 25%; a dozen years of policy–holder deaths saw to that. Granted, minor changes and adjustments to a settlement's terms do not ordinarily compel a new certification. But here the passage of 12 years, recent judicial decisions, and the district court's need to consider new evidence inexorably led to the new certification order here appealed.

**Different Payout Amounts.** The third settlement, the State and Farmers say, exceeds the 2003 settlement by $10 million in extra money that, the Farmers parties insist, is "not interest." Asked to comment on the "supplement" to the second settlement agreement, David Mattax, former class counsel and now the Commissioner of Insurance, opined that, "it's an improvement over the original settlement. … And the fact that we were able to get an additional

---

[1] Exhibit A to the 2015 Joint Motion for Preliminary Approval.

$10 million of value to the policyholders and eliminate some of the other issues that back in 2003 were an issue but really no longer are, like the question of the management fee, like the Geter class-action, I think it's a great improvement and I fully support it, yes." [2] In addition, the Appellees represent that some significant but unspecified quantum of the settlement has already been "paid" out to the class as rate reductions. And unlike in the first settlement, Farmers Group, Inc. will pay unspecified sums to its co-defendants, the Exchanges—they were owned in 2003 by their class member insureds—as part of the third settlement. In addition, the total payments to the credit–scoring class, originally unlimited in amount, is now reduced to $35 per claimant. In sum, evidence of how the third settlement differs from the first justified and required certification anew.

**Different Claims Being Released.** The third settlement does not release the same range of claims and rights as did the first settlement. "Unknown claims" are now defined by California law in this Texas case. Moreover, the agreement underlying the first settlement class did not release any of the rights or potential claims that accrue to class members by virtue of the Geter class action pending in Beaumont. But the third settlement agreement does specifically carve-out the Geter–based rights and potential claims. The Assistant Attorney General told the district court that, "[W]e added a carve-out for that [Geter] class action, for the declaratory relief that had been requested in that case. … So we have carved out that declaratory relief so that it can move forward without any fear that the release [in this case] will be held up to try to block that." [3] Commissioner Mattax affirmed the Geter carve-out that he had negotiated with Farmers and asserted, when he testified in the preliminary approval hearing, "I do support it as the

---

[2] Transcript, Preliminary Approval Hearing,. page 92 (1 July 2015).

[3] Transcript, pages 67-68, (1 July 2015).

Commissioner of Insurance."[4] In addition, the award of attorney fees and costs to class counsel are carved-out.

**Different Class Members.** The membership of the third settlement classes differs markedly from those of the first. Many of the homeowner–insureds in the first class died in the dozen years since the original certification. The third settlement class is logically smaller, a lot smaller, than the first. Assume that in 2003 the 1.8 million insureds were evenly distributed between the ages of 24 and 84 years. A quarter of them have likely expired in the last 12 years.[5] If the original class consisted of 1.8 million insureds, then survivors making up the newly certified class may be as few as 1.38 million. The dead cannot be class members, of course, and the loss of one third of the class is a big deal. This dramatic diminution in the membership of the class also compelled the recent certification.

**Different Disposition of Unpaid Settlement Funds.** Each of the three settlements provided that the funds not paid out to class members must go into the State's "unclaimed property fund." That proviso in the settlement agreements did not change from prior agreements, but the controlling law did. By requiring the payment of all undisbursed settlement monies to the State's unclaimed property fund, the Order violates the rule articulated in *Highland Homes*, pouring a multi-million dollar barrel of private property into the public trough.[6] When the court

_____

[4] *Id*., page 91.

[5] CDC tables showing mortality rates for Texans in 10–year age groups report an average death rate of 3,100 persons per 100,000 in the second year. As the cohort ages, the rates of death increase. In a cohort of 1.8 million homeowners and over a period of 12 years, on average, around 35,000 persons expire per year. Assuming that the homeowner–insureds were distributed evenly in ages from 25 to 84 years in 2003, the total expected deaths over the 12 year since are on the order of 418,000, about 23% of the class as certified in 2003.
See http://www.cdc.gov/nchs/data/dvs/MortFinal2007_Worktable23r.pdf.

[6] *Highland Homes, Ltd. v. The State of Texas,* 448 S.W.3d 403 (Tex. 2014).

certified the 2003 settlement class and when it refused to certify the 2013 settlement class, the shunting of the uncollected, undisbursed funds into the State's unclaimed property fund was not known to be unlawful. However, the Supreme Court in 2014 rejected the propriety of such expropriations. As explained in *Highland Homes*, section 74 of the Property Code covers abandoned funds as to which owners "have neither asserted claims nor exercised acts of ownership." We now know that the funds to be paid in the third settlement are manifestly not "unclaimed." The funds have necessarily been claimed by and through the class representative on behalf of all class members.[7] As currently framed, the settlement likely motivates the class representative to profit his client at the expense of the other class members. Because the district court had to and did consider this evidence, the new certification order was required.

**Collusion and Adequate Representation**

In contesting Highland Homes, the State presciently warned "that *cy pres* awards can be abused when they are nothing more than a judicial giveaway of private property."[8] This concern led the district court to hear evidence before certifying the 2015 settlement class(es). The Order that the Appellees drafted creates an incentive for class counsel to stand-aside in the claims process so that class members acquiesce in collecting their settlements. Their failure to pursue collection will result in a larger *cy pres* fund that inures to the benefit of the State.[9] This windfall will include funds that should have gone to the countless deceased, now former, members of the

---

[7] *Id*. at 410-11.

[8] *Id*. at 412.

[9] That the Comptroller makes an accounting entry that "books" the class members' money as "unclaimed property funds" does not prevent the State from actually spending the money when the Comptroller receives it. Moreover, the Comptroller enjoys and keeps earnings on the float.

2003 settlement class, as well as payments owed to class members who cannot be found or who are flummoxed by the puzzling notice and burdensome claim form that class counsel approved.[10]

Heartened by the Supreme Court's reminder that "trial courts must be careful in class actions to protect class interests and scrutinize settlements," the district court heard evidence on why the uncollected funds should go to the State, but it omitted to consider the collusive efforts of the Appellees to make the Order they presented look like it merely renewed and extended the 2003 certification to avoid the rigorous analysis required when it certified the new settlement class(es).

**Form versus Substance—a Look Beyond the Pleadings**

The Supreme Court has instructed that the trial court must perform a "rigorous analysis" of the Rule 42 requirements before certifying a class.[11]  The Austin Court has said the same.[12] Moreover, in deciding to certify a settlement–only class, heightened scrutiny is required to protect the absent class members.[13] The trial court did this in 2003. It highly scrutinized the 2013 second settlement agreement which it rejected. Aware of the challenges in this case and its duty to protect the putative classes, the district court approached the 2015 settlement agreement with care. The court had to consider the new evidence described above and had to weigh it in light of the Intervenors' objections. Because of the new evidence presented, the district court certified the

---

[10] And if the wealth transfer required by the Order must be done via a *cy pres* award to the State, then what statute will allow payment of the funds to class members who later come forward to collect? It will by then have become State property (and be already spent).

[11]  *Phillips Petrol. Co. v. Yarborough*, 405 S.W.3d 70, 80 (Tex. 2013)

[12]  *Canyon Lake Island Property Owners Assoc. v. Sterling/Suggs L.P.*, 2015 WL 3543125 (Tex. App. Austin—2015).

[13]  *McAllen Medical Center v. Cortez*, 66 S.W.2d 227, 232 (Tex. 2001).

2015 settlement classes when it signed the Order that contains all of the relevant Rule 42 requirements.

Of course the Appellees prefer to speak of the settlement class(es) the court certified in 2003, but those classes been modified by a dozen years of class–member deaths.The agreed pay-over of funds to the class representative's "unclaimed property fund" has been outlawed by the Supreme Court. The class representative and class counsel demonstrated the inadequacy of their representation. The collusion between the State and Farmers became manifest by 2014. Thus, the several hearings and the form of the pull–it–out–of–the–bag–at–the–last–minute order of certification. That the district court signed the Order while ignoring the certification order the Appellees appended to their second and third joint motions for preliminary approval shows the district court's lack of scrutiny and failure to conduct the rigorous analysis required in certifying the class(es). But the Order speaks for itself through all of the Rule 42 language that certifies a class.

The *Phillips* court explained the issue well, observing that, "A trial court's order changes the fundamental nature of the class, and is therefore subject to interlocutory appeal … if it modifies the class in such a way as to raise significant concerns about whether certification remains proper." [14]  Because of the evidence the district court heard describing how the the fundamental nature of the 2003 settlement classes and settlement agreement have changed over 12 years, the Order here appealed certified a new deal, certified new settlement classes.

---

[14]  *Phillips Petroleum Corp,,* 405 S.W.3d at 82.

**Conclusion**

For these reasons and for all the reasons set forth in Appellant Grigson's response to the Appellees' joint motion to dismiss, the Appellants request that the Court deny the Appellees' Joint Motion to Dismiss Gerald and Leslie Hookses [sic] Appeal for Lack of Appellate Jurisdiction, give this motion expedited consideration, and grant such other and further relief to which the Appellants be entitled.

Respectfully submitted,
**JOSEPH C BLANKS P.C.,**



By: Joseph C. Blanks, TBN 02456770,
**PO Box 999, Doucette, Texas 75942. 409-837-9707 fax 877-563-7052**
Attorney for Intervenors/Appellants Gerald Hooks, Jr. and Lesly K. Hooks

**CERTIFICATE OF SERVICE**
I certify that on **6 August 2015** I attempted to electronically file the above instrument With the Clerk of the Court using the E file.TX courts.gov electronic filing system that will send notification of such filing to the following persons:

• Michael J Woods, MichaelJWoods@SBCglobal.net,
8620 N. New Braunfels, Suite 522, San Antonio, TX 78217,
  *Pro Se Intervenor/Objector*

• Joe K Longley Joe@JoeLongley.com,
And
• Philip K Maxwell, Phil@PhilMaxwell.com,
1609 Shoal Creek Blvd., Suite 100, Austin, TX 78701,
  *Counsel for Intervenor/Appellant Charles O "Chuck" Grigson*

• Mercy Hogan Greer, mGreer@adjtLaw.com, Alexander DuBose Jefferson and Townsend LLP,
  515 Congress Ave., Suite Suite 2350, Austin, TX 78701-3562
And
• M Scott Incerto, @NortonRoseFulbright.com,
  Norton Rose Fulbright US LLP, 98 San Jacinto Blvd., Suite 1100, Austin, TX 78701,

And
- Darryl W Anderson, darryll.anderson@NortonRoseFulbright.com
- Geraldine W Young, geraldine.young@NortonRoseFulbright.com
  NORTON ROSE FULBRIGHT US LLP, 1301 McKinney, Suite 5100, Houston, TX 77010 – 3095

*Counsel for Defendants/Appellees Fire Underwriters Association, Farmers Group Inc., Farmers Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid–Century Insurance Company of Texas, Mid–Century Insurance Company, Farmers Texas County Mutual Insurance Company, Truck Insurance Exchange, and Truck Underwriters Association.*

- Joshua R Godbey, Joshua.Godbey@TexasAttorneyGeneral.gov,
- Ryan S Mindell, Ryan.Mindell@TexasAttorneyGeneral.gov,
- Jennifer S Jackson, Jennifer.Jackson@TexasAttorneyGeneral.gov
  ASSISTANT ATTORNEYS GENERAL OF TEXAS, PO Box 12548, Austin, TX 78711 – 2548

*Attorneys for Plaintiffs – Appellees, the State of Texas, the Texas Department of Insurance, and the Texas Commissioner of Insurance*



Joseph C. Blanks

### Certificate of Conference

I certify that on 20 July 2015 I conferred with M. Scott Incerto, counsel for the Farmers parties, about the merits of the Appellees' Motion to Dismiss for Lack of Appellate Jurisdiction, pursuant to Texas Rule of Appellate Procedure 10.1(a)(5), and I advised him that the Hooks oppose the Appellees' motion.



Joseph C. Blanks

**Certificate of Compliance with Texas Rule of Appellate Procedure 9.4 (i)**

I certify that the foregoing document contains 3094 words and complies with the word limit set forth in Texas Rule of Appellate Procedure 9.4(i).

Joseph C. Blanks